IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARY SPANO, et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:06-cv-00743-DRH-DGW |
| ) | |
| THE BOEING COMPANY, et. al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Currently pending before the Court is Plaintiffs' Motion to Amend the Complaint (Doc. 79), Defendants have responded (Doc. 91), and Plaintiffs have filed a reply (Doc. 93). For the reasons set forth below, this motion is **GRANTED**.

### FACTUAL BACKGROUND

The Plaintiffs in this case, Gary Spano, John Bunk, and James White, Jr. ("Plaintiffs"), filed their complaint against the Defendants, The Boeing Company, the Employee Benefits Plans Committee, and Scott Buchanan ("Defendants"), on September 28, 2006 (Doc. 2). The Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA"), alleging that the Defendants breached their fiduciary duties as defined contribution plan administrators under the Act.

On February 15, 2007, the Court issued a Scheduling Order in the action adopting the discovery deadlines recommended by the parties (Doc. 54). The Scheduling Order directed that the "[p]arties may amend their respective complaint and answer freely on or before June 1, 2007" (Doc. 54, p. 3). The parties later agreed to extend the deadline to June 20, 2007 (Doc. 71). Discovery is scheduled to close on April 2, 2008, dispositive motions must be filed by April 23, 2008, and trial is set for August of 2008 (Doc. 54).

In response to Plaintiffs' discovery requests, the Defendants produced almost 56,000 pages of documents between April and October of 2007 (Doc. 79, pp. 2-3; Doc. 93, p. 1). During the course of reviewing these documents, the Plaintiffs discovered that Boeing had delegated operational and investment matters to an Employee Benefits Investment Committee (the "EBIC"), as revealed in a document entitled "VIP Investment Funds Delegation of Authority" produced by the Defendants on September 14, 2007 (Doc. 79, pp. 3-4).

On September 29, 2007, the Plaintiffs filed a Motion for Leave to Amend the Complaint, seeking to join EBIC as a defendant in accordance with the information discovered in the "VIP Investment Funds Delegation of Authority" document (Doc. 79, pp. 1, 4). The Plaintiffs also seek to add claims relating to the Defendants' breach of fiduciary duty in the operation and administration of the defined contribution plan (Doc. 79, p. 4). Plaintiffs contend allowing the amendments would not prejudice Defendants.

In opposition to the Plaintiffs' motion, Defendants argue that the Plaintiffs were not diligent in their review of the documents produced and that they were, in fact, aware of EBIC's role as the defined contribution plan's fiduciary before the amendment deadline in the Scheduling Order (Doc. 91, p. 1). They further argue that the Plaintiffs should not be allowed to add any additional causes of action at this point in the litigation because the Plaintiffs knew or should have known of the claims before the expiration of the deadline for amendment (Doc. 91, pp. 5-6).

**LEGAL STANDARDS**

A district court enjoys wide latitude in the discovery matters before it. See Hay v. Indiana State Bd. Of Tax Comm'rs, 312 F.3d 876, 882 (7th Cir. 2002). Granting leave to amend

is entirely within the sound discretion of the Court. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971). The Court is guided by the general principle that the "discovery rules are to be accorded a broad and liberal treatment" as the "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947); see also Herbert v. Lando, 441 U.S. 153, 177 (1979) ("[t]he Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials").

In considering a motion to amend the complaint, the Court looks to Rule 15 of the Federal Rules of Civil Procedure which states that a party may amend his complaint once as a matter of course before being served with a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A).[1] Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule also mandates that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has ordered that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is evidence of undue delay, bad faith, dilatory motive, prejudice, or futility. See Guise v. BWM Mortgage, LLC, 377 F.3d 795, 801 (7th Cir. 2004). Courts consider requests to add a party presented in a motion to amend under the standards of Rule 15(a), even though Rule 21 governs the joinder of parties. See U.S. ex rel. Precision Co. v. Koch Indus., Inc., 31 F.3d 1015, 1018-19 (10th Cir. 1994). Similar standards underlie determinations made pursuant to both rules. See Helene Curtis Indus. v. Sales

---

[1] The Court refers to the amendments to the Federal Rules of Civil Procedure that became effective December 1, 2007.

Affiliates, 105 F.Supp. 886, 900 (S.D.N.Y. 1952) (question whether to add or drop party under Rule 21 is treated liberally and is within sound discretion of trial court; inquiry focuses on potential prejudice to nonmovant).

Once a scheduling order deadline has passed, however, a motion to amend the complaint is also construed as a request to amend the scheduling order.[2] See, e.g., Trustmark Ins. Co. v. Cologne Life Re of America, 424 F.3d 542, 553 (7th Cir. 2005); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir.1992). The standard for amending a scheduling order is governed by Rule 16(b)(4), which states "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "'good cause' standard primarily considers the diligence of the party seeking amendment." Trustmark, 424 F.3d at 553 (quoting Johnson, 975 F.2d at 609). In Trustmark, the question of whether to grant leave for amend turned on whether the movant "was, or should have been aware" of the "facts underlying" the claim prior to the expiration of the scheduling order deadline. Id.

## ANALYSIS

The Plaintiffs' proposed amended complaint seeks to add EBIC as a defendant and contains three additional causes of action, all relating to the Defendants' breach of fiduciary duty to the Plaintiffs as defined contribution plan administrators under ERISA. First, Plaintiffs claim that the Defendants breached their duty when they failed to capture additional compensation

---

[2] The Plaintiffs argue that the standard for granting a leave to amend is governed solely by Rule 15(a). However, "[i]f [the court] considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir.1998). Thus, the standards of both 15(a) and 16(b) guide our inquiry.

streams for the benefit of the Plaintiffs' defined contribution plan ("the Plan") (Proposed Amended Complaint, p. 25). Plaintiffs next state that the Defendants breached their duty when they included mutual funds among the Plan's investment options (Proposed Amend. Compl., p. 26). Finally, Plaintiffs state that the Defendants breached their fiduciary duty by paying for active investment management of various funds offered with the Plan (Proposed Amend. Compl., p. 27). Plaintiffs also seek to add additional facts derived from the new claims in support of their original claim of concealment and non-disclosure (Proposed Amend. Compl., p. 28).

## **JOINDER OF EBIC**

The Plaintiffs argue that although they were aware of the existence of the EBIC early in the discovery process, the Defendants did not produce the document clearly identifying the delegation of authority to the EBIC until September 14, 2007. (Doc. 79, p.3, Exh. E; Doc. 104.) In response, Defendants contend that the Plaintiffs were well aware of EBIC's role before the deadline. Specifically, they provide exhibits purporting to show that EBIC's role was unambiguous to the Plaintiffs. (Doc. 91, Exh. E to Christopher Rillo Declaration.) After review of these documents, the Court finds the Defendants' argument unpersuasive; the documents are ambiguous throughout. For example, at least two committees are responsible for the administration of the Plan, the EBIC and the Employee Benefits Plans Committee ("EBPC"). The documents provided by the Defendants, however, refer to administration only by "the Committee." It is unclear to which "committee" the documents refer. To further confuse the issue, the document that Defendants claim as having put Plaintiffs on notice of the delegation of fiduciary duty of the EBIC prior to the amendment deadline refers to an "Employee Benefit

Plans Investment Committee." (Doc. 91, Exh. A to Deborah Olson Declaration.) The Court itself is befuddled as to whether this is the EBIC the EBPC or some heretofore unidentified third committee. Although Defendants strenuously argue that the fiduciary delegation to the EBIC was clear from early in the discovery process, the documents they submit in support of this contention are unclear, casting doubt upon their assertion. Furthermore, the Court finds that the Defendants will not be prejudiced by the joinder of the EBIC because Defendants were fully aware of the EBIC's role as the Plan's fiduciary, even if the Plaintiffs were not, and were therefore aware of EBIC's potential liability. Although Plaintiffs may have been aware of the existence of EBIC as an entity prior to the deadline for amendment, they have shown they were not aware of its role in administration of the Plan until September 2007. Therefore, the Court finds Plaintiffs have shown good cause to amend the complaint to join EBIC as an additional defendant in the action. Accordingly, that request is **GRANTED**.

### NEW CLAIMS

The Defendants contend that the Plaintiffs had full knowledge of the existence of each of the proposed additional claims prior to the expiration of the scheduling order deadline. In response, the Plaintiffs point out that the Defendants undertook a "rolling production" of documents consisting of over 56,000 pages of documents produced between April and October of 2007; approximately 8,000 pages in June (the deadline for amendment was June 20), 4,000 pages in August, 500 pages in September, and almost 3,500 pages in October, several hundred arriving as late as October 23, 2007 (Doc. 79, p. 3; Doc. 93, p. 1).

Upon review of the proposed amended complaint, the Court finds that each of the new claims are of the kind which are made manifest only after significant discovery. The Defendants

point to several vague statements made by the Plaintiffs' counsel that suggest that Plaintiffs were aware of the claims prior to the start of litigation (Doc. 91 pp. 5-6). However, these assertions do not indicate that the Plaintiffs had the kind of specific knowledge required to transform a mere a suspicion into a cognizable claim. Further, Plaintiffs have shown that Defendants produced a large number of documents after the deadline for amendment. No amount of diligence on the part of Plaintiffs could have forced production of those documents prior to the deadline; the production was at the will of the Defendants. Therefore, it is the Defendants' own conduct that belies their assertion that the Plaintiffs have not been diligent in making timely claims. The Court notes that Defendants characterize the Plaintiffs' amendments as "a major re-write of this lawsuit." (Doc. 91, p. 4.) The Court disagrees. These amendments are of the kind that would naturally arise after some discovery in a lawsuit of this magnitude.

As to each claim specifically, the Plaintiffs first seek to add a claim that the Defendants failed to capture additional compensation streams for the benefit of the Plan. The facts alleged to support the claim are discoverable only upon the review of documents that expose the inner workings of the investment processes, and were not readily foreseeable at the outset of litigation. For example, the Plaintiffs state that the "trustees or custodial banks perform cash sweeps of Plan accounts to capture cash before it is transferred to investment options, and earn interest ("float") on those cash holdings." (Proposed Amend. Compl. p. 25.) The specifics of this practice could not have been known prior to an examination of the transactional documents in detail.

Second, the Plaintiffs seek to add a claim that the Defendants breached their fiduciary duties by offering standard mutual funds among investment options. The specific facts needed to

7

support this claim are likewise discoverable only upon review of the documents produced during discovery. Even if Plaintiffs were aware that mutual funds were offered, their availability alone does not constitute a breach, and therefore a cognizable claim. Plaintiffs found in discovery, however, that the high fees for these funds were unwarranted when a better option, a "separate account," was available at the outset. In fact, the Defendants switched to a separate account in 2006 and this move saved the Plan ten million dollars ($10,000,000). (Proposed Amend. Compl. p. 27.) This information was buried within the 56,000 pages of documents provided to the Plaintiffs, and could not have been known to Plaintiffs until they thoroughly reviewed the documents.

Plaintiffs' third additional claim states that Defendants breached their fiduciary duty by offering actively managed funds as investment options. Like the mutual funds claim, on its face, offering active investment management would not appear to breach the Defendants' fiduciary duties. Upon closer inspection of fund performance, however, the actively-managed funds yielded less return than the passively-managed funds, at a higher cost to the Plan (Proposed Amend. Compl. p. 27). Again, this is not the kind of information readily-apparent at the outset of litigation but the type of claim that becomes clear after some discovery.

Finally, Plaintiffs have added facts occurring after the filing of the original complaint to bolster their allegation that the Defendants have engaged in a campaign of concealment and non-disclosure (Proposed Amend. Compl. pp. 28-33). This is a permissible reason for allowing Plaintiffs to supplement their complaint. See Fed. R. Civ. P. 15(d).

The Court finds that Plaintiffs have met their burden to show that they have good cause for allowing amendment after the scheduling deadline. However, the Plaintiffs must still sustain

their burden under 15(a) to show absence of undue delay, bad faith, dilatory motive, prejudice, or futility.  Foman, 371 U.S. at 182; Perrian v. O'Grady, 958 F.2d 192, 193-94 (7th Cir.1992).

As described above, the delay in seeking leave to amend did not result from the Plaintiffs' own conduct, so it cannot be found to be "undue."  There is also no evidence of bad faith or dilatory motive.  Moreover, the Defendants will not be prejudiced by amendment.  Indeed, the Defendants do not challenge the Plaintiffs' arguments in this regard.  Dispositive motions are not due in the action until April 23, 2008, and a trial is not scheduled in this matter until August 2008.  In addition, the case is currently stayed pending a determination of class certification.  Thus, there is adequate time for additional discovery, to the extent it is necessary, and for preparation of dispositive motions and trial.

## CONCLUSION

Based on all the foregoing, the Court finds that Plaintiffs have shown good cause to modify the scheduling order to allow amendment of the complaint to add the EBIC as a defendant and the additional claims.  Furthermore, the Court finds that Defendants will not be prejudiced by the proposed amendments at this point in the litigation.  Accordingly, the Plaintiffs' Motion to Amend the Complaint (Doc. 79) is **GRANTED**.

**IT IS SO ORDERED.**

**DATED:  December 14, 2007**

*s/Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**