IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GARY SPANO, et al.,**

**Plaintiffs,**

**v.**

**THE BOEING COMPANY, et al.,**

**Defendants.**  No. 06-0743-DRH

**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

### I. Introduction and Background

Pending before the Court is Plaintiffs' motion for class certification (Doc. 24). Defendants oppose the motion. Based on the pleadings, applicable case law, the Court grants the motion.

Plaintiffs Gary Spano, John Bunk and James White, Jr., bring this action against Defendants, The Boeing Company ("Boeing"), Employee Benefits Plans Committee, Scott M. Buchanan and Employee Benefits Investment Committee pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 - 1461 ("ERISA"), on behalf of The Boeing Company Voluntary Investment Plan ("the Plan"). Plaintiffs allege breach of fiduciary duty pursuant to ERISA § 409, 29 U.S.C. § 1109, ERISA §§ 502(a)(2), (3), 29 U.S.C. §§ 1132(a)(2), (3) and seek to remedy the Plan's losses and to obtain injunctive and other equitable relief for the Plan from Defendants. Plaintiffs claim that the breaches occurred on a plan-wide

basis, and were the result of decisions made at the Plan, rather than the individual level, affecting all of the participants and beneficiaries in the Boeing-sponsored 401(k) plan. Plaintiffs' Second Amended Complaint contains two counts: Count I - breach of fiduciary duty pursuant to ERISA 502(a)(2) and Count II - other remedies for breach of fiduciary duty pursuant to ERISA 502(a)(3) (Doc. 186).

On November 22, 2006, Plaintiffs moved for class certification (Doc. 24). Specifically, Plaintiffs seek to certify the following class:

> All persons, *excluding the Defendants and/or other individuals who are or may be liable for the conduct described in this Complaint*, who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Plan in the future.

Defendants filed their opposition to class certification on April 9, 2007 (Doc. 61) and Plaintiffs filed their reply on May 3, 2007 (Doc. 68). On June 15th and 28th, 2007, Plaintiffs filed supplements to the class certification motion (Docs. 73 & 74, respectively). Thereafter, on September 28, 2007, the Court *sua sponte* stayed the proceedings with respect to the motion for class certification pending the outcome of an appeal of an Order granting class certification entered by District Judge Michael J. Reagan in similar ERISA breach of fiduciary case, **Lively v. Dynegy, Inc., 2007 WL 685861 (S.D. Ill. March 2, 2007)** (Doc. 76). On April 3, 2008, the Court lifted the stay regarding the class certification proceedings as the **Lively** case settled prior to the Seventh Circuit issuing a decision (Doc. 142). On April 15, 2008,

the Court granted Defendants leave to file a supplement to class certification and Defendants filed their brief on April 15, 2008 (Docs. 152 & 155, respectively). On April 21, 2008, the Court allowed Plaintiffs leave to file a reply to Defendants' supplement and Plaintiffs filed their reply on April 25, 2008 (Docs. 161 & 165, respectively). Subsequently, Plaintiffs filed a notice of supplemental authority in support of class certification on June 20, 2008 (Doc. 174).

In the meantime, Plaintiffs filed a motion for leave to file a Second Amended Complaint (Doc. 150). On August 22, 2008, Magistrate Judge Wilkerson granted Plaintiffs' motion for leave (Doc. 185). On August 25, 2008, Plaintiffs filed their Second Amended Complaint (Doc. 186) to which Defendants filed an Answer and a motion to dismiss or for summary judgment based on statute of limitations (Docs. 188 & 189, respectively).[1] As the motion for class certification is ripe, the Court turns to address the motion.

## II. Facts

Defendant Boeing offers a 401(k) plan to its employees known as The Boeing Voluntary Investment Plan. Participants contribute varying percentages of their before-tax (and in some cases, after tax) earnings to the Plan. Boeing matches these contributions in varying percentages. Boeing makes use of a Master Trust to hold the assets of the Plan. The Plan shares the services of record-keepers, investment managers, consultants, and other service providers directly and/or

---

[1] The Court notes that the motion to dismiss is not ripe.

through the Master Trust.

ERISA sets forth the duties that an employer (or its delegates) owe to its 401(k) plan participants. Section 403(c), 29 U.S.C. § 1103(c), requires that the plan's assets be used "solely for the exclusive purposes of providing benefits to participants" and for "defraying reasonable expenses of administering the plan." ERISA mandates that plan fiduciaries – such as the plan sponsor and administrator, as well as others acting in a fiduciary capacity – must discharge their fiduciary duties "solely in the interest of the participants and beneficiaries." **29 U.S.C. § 1104(a)(1)**. Plan sponsors, administrators and other fiduciaries must act "within the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan." *Id.* They must discharge these duties "with care, skill, prudence, and diligence" that a "prudent man" acting in a similar capacity would use under similar circumstances. **29 U.S.C. § 1104(a)(1)(b)**. The fiduciaries owe these duties to all participants in 401(k) plans.

In their Second Amended Complaint, Plaintiffs allege, *inter alia,* that Defendants breached their fiduciary duties by causing or allowing unreasonable fees and expenses to be charged against the assets of the Plan and by failing to ensure that the Plan's assets were used solely for the exclusive purposes of providing benefits to participants. Plaintiffs allege that these excessive fees were imposed on the Plan through a combination of both "Hard Dollar" payments and hidden "Revenue Sharing" transfers. Plaintiffs further allege that Defendants breached their

core fiduciary obligations by causing the Boeing Stock Fund ("BSF") to incur unnecessary fees and to hold excess cash; again impairing the value of, and return on, the Plan's assets.

The Second Amended Complaint also alleges that Defendants further violated their fiduciary duties by failing to disclose and/or concealing material information regarding Plan fees and expenses. Plaintiffs also allege that Defendants selected and retained mutual funds as Plan investment options until 2006- which not only charged excessive investment management expenses - but were also the vehicle Defendants used to funnel excessive Plan recordkeeping and administrative fees to State Street/CitiStreet via their undisclosed revenue sharing program.

### III. Class Certification Standard

Rule 23 of the Federal Rules of Civil Procedure sets for the prerequisites for a class action: (1) a proposed class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be a question of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). **See Fed.R.Civ.P. 23(a)**. In addition to satisfying these four criteria, a party seeking class certification must also demonstrate that the action falls within one of the categories enumerated in Rule 23(b). **See Fed.R.Civ.P. 23(b)(1), (b)(2), (b)(3)**.

A party seeking class certification bears the burden of proving that each of the requirements under Rule 23 have been met, and a failure by the movant to satisfy any one of the prerequisite elements precludes certification. ***See General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993)**. A court has broad discretion to determine whether a proposed class meets the Rule 23 certification requirements. ***Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984)**. In making this determination, Rule 23 should be construed liberally to support its policy of favoring the maintenance of class actions. ***See King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25-36 (7th Cir. 1975)**. As a general principle, a court is not allowed to engage in analysis of the merits to determine whether the case should be maintained as a class. ***Retired Police Ass'n*, 7 F.3d at 596 (7th Cir. 1993)**. However, a district court must make a preliminary review into the merits of the case if some of the considerations under Rule 23 overlap the merits. ***Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir.), cert. denied, 122 S.Ct. 348 (2001);** *see also Eisen v. Carlisle & Jacquelin*, **417 U.S. 156, 177-78 (1974)**. Even where the elements of class certification are not in dispute, a court has a duty to evaluate independently the proposed class to ensure its compliance with the requirements of Rule 23. ***See Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003)**.

## IV. Analysis

Courts have implied two prerequisites to class certification that must be satisfied prior to addressing the requirements of Rule 23(a): (1) the class must be sufficiently defined so that the class is identifiable; and (2) the named representative must fall within the proposed class. ***Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir. 1977)***. Proper identification of the proposed class serves two purposes. First, it alerts the court and the parties to the potential burdens class certification may entail. ***Simer v. Rios, 661 F.2d 655, 670 (7th Cir. 1981)***. In this way, the court can decide whether the class device simply would be an inefficient way of trying the lawsuit for the parties as well as for its own congested docket. ***Id.*** Second, proper class identification insures that those individuals actually harmed by defendant's wrongful conduct will be the recipients of the awarded relief. ***Id.***

Here, the Court finds that the proposed class is properly defined and that the named representatives clearly fall within the class. Defendants argue that the class definition does not distinguish among Plan participants that invested in revenue-sharing funds and those who did not, or those who invested in the Boeing Stock Fund and those who did not. Further, Defendants contend that the proposed class improperly contains past and future participants. Lastly, Defendants argue that the class definition requires a determination of the merits. The Court rejects Defendants' arguments.

As to Defendants' argument that Plaintiffs' definition fails to distinguish

the class participants, the Court finds that distinction is not necessary. As demonstrated below, it is the Defendants' conduct that is at issue and not Plaintiffs' conduct. Further, the Court finds that the class definition does not require a determination on the merits.

With respect to future participants, the Court finds that the inclusion of future class members is appropriate here because Plaintiffs request an injunction prohibiting the continuation of current practices; and this injunctive relief, if granted, would affect not just present participants, but future participants as well. Further, as to the past participants, the Court also finds that inclusion of past class members is appropriate. Participants who took distributions and ended their participation in the Plan received less than they should have from the Plan because of Defendants' misconduct. Including them in the class, Plaintiffs seek to remedy this shortfall. A "participant" has been defined by the Supreme Court as (1) an employee in currently covered employment; (2) an employee reasonably expected to be in currently covered employment; (3) a former employee with a reasonable expectation of returning to current employment; or (4) a former employee with a colorable claim for vested benefits. **Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989)**. As "colorable claim" language has been broadly interpreted – including by the Seventh Circuit, which stated that the former employees are participants if they have a colorable claim that they cashed out of a plan, "at a smaller benefit than they were due." **Clair v. Harris Trust & Savings Bank, 190 F.3d 495, 497 (7th Cir. 1999)**.

**Numerosity**

Rule 23(a)(1) requires that the class be so "numerous that joinder of all the members is impracticable." **Fed.R.Civ.P. 23(a)(1)**. Defendants do not dispute that the requirement of numerosity is satisfied and, therefore, have forfeited any objection to Plaintiffs' satisfaction of this requirement. *See **Volovsek v. Wisc. Dep't of Agr., Trade & Consuer Prot.**, 344 F.3d 680, 689 n.6 (7th Cir. 2003)(**absence of legal argument forfeits consideration of claim**)*. Here, Plaintiffs do not know the exact number of class members. Plaintiffs maintain that Boeing's 2004 filings with the Department of Labor on behalf of the Plan, disclose that there were 189,577 participants with account balances in the Plan. This number is well beyond that which has been accepted as meeting the numerosity requirement. ***Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)**. Thus, it is clear that the requirement of numerosity is met.

**Commonality**

Under Rule 23(a)(2), "questions of law or fact common to the class" must exist before a class may be certified. **Fed.R.Civ.P. 23(a)(2).** The requirement is usually met when a common nucleus of operative fact unites a class. ***Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), cert. denied, 506 U.S. 1051 (1993)**. The presence of some factual variations among the class members does not defeat commonality, so long as there is at least one question of law of fact common to the class. ***Id.* at 1017; *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)**.

Though commonality and typicality are closely related, the tests are distinct. ***Retired Chicago Police Ass'n*, 7 F.3d at 596-597**.

The Court concludes that common issues of fact and law are present here. Plaintiffs' Second Amended Complaint identifies fifteen common issues of law or fact (Doc. 186, ¶ 26). *Inter alia,* Plaintiffs challenge the impudent and improper investment options and the reasonableness of the administrative fees paid by the Plan. These administrative fees are paid by Plan participants - proposed class members – and each participant has these issues in common. Further, Plaintiffs' allegations that Defendants breached one or more fiduciary duties and that the alleged breaches of fiduciary duty resulted in damage to the Plan are also common to the class. Plaintiffs seek damages and other remedies for the Plan itself. Though there is some factual variations among class members, the variations will not defeat commonality under Rule 23(a)(2), so long as there is at least one question of law or fact common to the class. ***See Rosario*, 963 F.2d at 1017**.

The Court finds that Defendants' conduct and decisions regarding the Plan amount to common course of conduct vis-a'-vis the putative class. Defendants managed and controlled the Plan's assets and directed the Plan's investment options. Plaintiffs assert that through this management and control, Defendants continued to invest the Plan's assets when they knew or should have known it was imprudent to do so. Further, because Plaintiffs' claims derive from actions (or inactions) of Defendants, Plaintiffs have demonstrated that their claims arise from a common

nucleus of operative facts.  *See Keele*, **149 F.3d at 594**.  The Court finds that this case presents common questions of law and fact to satisfy Rule 23(a)(2).

Defendants maintain that the many differences in the "factual and legal arguments" preclude any finding of commonality.  In particular, Defendants maintain that Plaintiffs' claims lack any common issue of operative facts because the Plan is an "individual account plan" that allows participants to select from a menu of different investment options and that these circumstances would require the Court to conduct fact-finding as to the very type of detailed fund-by-fund, participant-by-participant analysis the renders class-wide treatment impossible.  Furthermore, Defendants argue that "whether fees are 'unreasonable and excessive,' ... would depend upon an analysis of the services, investment returns, risks and other factors that must be examined on a fund-by-fund basis.  Defendants also argue that Plaintiffs' new allegations and their experts' reports "balkanize" their claims further.  The Court disagrees.  **See *Lively*, 2007 WL 685861, at \*8 ("[T]he appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs.")(citations omitted)**.

### Typicality

The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement of Rule 23(a)(2).  ***Rosario*, 963 F.2d at 1018**.  Rule 23(a)(3) requires a court to determine whether the "claims or defenses of the representative parties are typical of the claims and defenses of the class."

**Fed.R.Civ.P.23(a)(3).** A plaintiff's claim is typical if it (1) arises from the same event, practice or course of action that gives rise to the claims of the other class members; and (2) the claims of the plaintiff and the class members are based on the same legal theory. ***Rosario*, 963 F.2d at 1018;** ***De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)**. Frequently, a finding of commonality will also equal a finding of typicality as well. ***Rosario*, 963 F.2d at 1018**. In deciding whether a plaintiff has met the typicality requirement, courts focus on the conduct of the defendant and determine whether the putative class representative and the members of the putative class claim similar injuries due to defendant's alleged actions. ***See Rosario*, 963 F.2d at 1018**.

The Court finds that Plaintiffs' claims are typical of those of the putative class, principally because they seek relief on behalf of the Plan under section 502(a)(2) of ERISA for alleged fiduciary violations as to the Plan. Defendants argue that the putative class fails to meet the typicality requirement because of variances in each participant's investment decisions under the Plan and that Plaintiffs' claims regarding concealment and non-disclosures require a participant-by-participant consideration.

Here, Plaintiffs assert the same injury arising from the same course of conduct as all members of the proposed class. Plaintiffs have alleged that Defendants caused or allowed excessive fees to be charged to the Plan as a whole by failing to disclose and/or concealing information regarding Plan fees and expenses.

Likewise, Plaintiffs' claims are premised on upon the same legal theory, a breach of fiduciary duties, as the claims of the proposed class. Defendants raise similar arguments as they did for commonality in that under the Plan, each participant was responsible for selecting among eleven investment options with different management styles, investment objectives and fees and that the investment options and fees varied throughout the proposed class period. Defendants argue that there can be no class-wide answer when issues of causation and injury depend on individualized investment decision-making and timing of the investment selection. The Court disagrees. As stated in ***Lively***, named Plaintiffs' investment histories may differ from those of other class members. ***Lively*, 2007 WL 685861, at \*10**. Furthermore, the fact that losses attributable are likely to differ from participant to participant, individual damages will not defeat typicality. ***See DeLaFuente*, 713 F.2d at 232**.

   Defendants contend that Plaintiffs' claims of non-disclosure and concealment require individual inquiries. Plaintiffs, however, contend that because their claims are on behalf of the Plan, there is no need to make individualized determinations. Plaintiffs argue that their claims do not turn on whether Defendants concealed material information from participants. Plaintiffs maintain that Defendants had fiduciary obligations to properly manage and administer the Plan, regardless of what participants were told or not told, and the concealment and non-disclosure is further evidence of the breaches. The Court agrees with Plaintiffs.

Furthermore, the Seventh Circuit has never expressly held that detrimental reliance is an element of an ERISA breach of fiduciary claim. It has stated the elements of such a claim are: (1) defendants are plan fiduciaries; (2) defendants breached their fiduciary duty; and (3) the breach caused harm to the plaintiff. ***See Brosted v. Unum Life Ins. Co. of Am., 421 F.3d 459, 465 (7th Cir. 2005)***. Courts deciding similar questions regarding omissions and misrepresentations under ERISA section 502(a)(2) claims have concluded that if alleged misrepresentations were made to class members in general, on a plan-wide basis (rather individually or personally), then typicality is present and class certification is appropriate. ***See Brieger v. Tellabs, Inc., 245 F.R.D. 345, 353 (N.D. Ill. 2007); Nauman v. Abbott Labs., 2007 WL 1052478, at *2-3 (N.D. Ill. April 3, 2007)***; ***Rogers v. Baxter*, 2006 WL 794734, at *4 (N.D. Ill. March 22, 2006)**. Thus, what Plaintiffs knew, and when, regarding the allegations of non-disclosure and concealment, does not defeat typicality.

**Adequacy of Representatives**

The class representatives must "fairly and adequately protect the interests of the class." **Fed.R.Civ.P. 23(a)**. This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." ***Amchem Prods v. Windsor*, 521 U.S. 591, 625 (1997)(citation omitted)**. In order to satisfy the requirements of Rule 23(a)(4), the class representative must "possess the same interest and suffer the same injury as the class members." ***Uhl v. Thoroughbred***

***Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002)**. Courts do not deny class certification on speculative or hypothetical conflicts. ***See Rosario*, 963 F.2d at 1018-19**.

Defendants counter that Plaintiffs' new claims and theories create insurmountable conflicts that render Plaintiffs inadequate. Specifically, Defendants argue that while the three named Plaintiffs want the elimination of the Boeing Stock Fund and all actively managed funds, thousand of Plan participants have elected to invest in these funds over the years. Therefore, Defendants maintain that these named Plaintiffs cannot represent a class that includes that many participants who reject what they want to do. The Court does not agree. Each Plaintiffs' causes of action involves Defendants' breaches of their core fiduciary duties. All have been injured as a result of Defendants' practices and will continue to be injured as long as their retirement savings remain in the Plan. The named Plaintiffs seek relief that would affect the Plan as a whole, and because any monetary relief would go to the Plan, the interests of the named Plaintiffs are aligned with those of the unnamed class members. As Judge Reagan stated in ***Lively***: "no individual member of the proposed class has an incentive to maximize his or her individual recovery because the recovery in this case is on behalf of the Plan and is the same with respect to each Plaintiff and unnamed class member, that is, all of the loss to the Plan caused by the alleged fiduciary duties." ***Lively*, 2007 WL 685861, at \* 13**. As stated previously, the focus is on Defendants' conduct in this case, not on Plaintiffs' conduct. There is

no inherent conflict between the claims of the named Plaintiffs and those of the putative class.

Further, the Court is unpersuaded that adequacy is defeated because Plaintiffs are subject to a unique defense – that fees were immaterial to these remaining named Plaintiffs. Plaintiffs' review or understanding of the Defendants' fee matrix has no bearing whatsoever on whether Defendants complied with their fiduciary duties. ***See Lively*, 2007 WL 685861, at *8 & 10-11**. The Court concludes that Plaintiffs have no conflicts of interest with the members of the proposed class that prevent them from serving as adequate class representatives. Thus, all of the requirements of Rule 23(a) are satisfied.

**Rule 23(b) Requirements**

After fulfilling the requirements of Rule 23(a), plaintiffs must also meet one of the subsections of Rule 23(b). Plaintiffs contend that they can meet the requirements of Rule 23(b)(1) or alternatively meet the requirements of both Rule 23(b)(2) and (b)(3). Rule 23(b)(1) allows for certification of the class if:

> T]he prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

**Fed.R.Civ.P. 23(b)(1)**. Though the Supreme Court has cautioned that Rule 23(b)(1) should be "narrowly interpreted," it also advised that "[a]mong the traditional

varieties of representative suit encompassed by Rule 23(b)(1)(B) were those involving the 'presence of property which called for distribution or management.' " ***Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999) (citations omitted)**.

Plaintiffs bring their claims on behalf of the Plan as a whole to recover benefits owed under the Plan. Any recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA. ***See In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3rd Cir. 2005) (plan participants' claims are on behalf of the plan to recover Plan's losses due to breach of fiduciary duty);** *Kuper v. Iovenko,* **66 F.3d 1447, 1452-53 (6th Cir. 1995) (explaining that "breaches of fiduciary duty injure the plan and, therefore, any recovery should go to the plan")**. Because Plaintiffs bring their claims on behalf of the Plan, adjudications of the representative Plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan. Further, adjudication of the claims involves the recovery and distribution of Plan assets on behalf of the Plan rather than determination of personal causes of action brought by individuals. As a result, separate actions by individual plaintiffs would impair the ability of other participants to protect their interests if the suit proceeded outside of a class context. Plaintiffs therefore meet the requirements of Rule 23(b)(1).[2]

---

[2] Because the Court finds that certification is proper under Rule 23(b)(1), the Court need not consider Plainitffs' alternative request for certification under Rule 23(b)(2) and (b)(3).

**Adequacy of Counsel**

Having determined that class certification is appropriate, the Court addresses the issue of adequacy of the proposed class counsel. Rule 23 provides, in part, "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." **Fed.R.Civ.P. 23(g)(1)(A)**. The rule provides further that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." **Fed.R.Civ.P. 23(g)(1)(B)**. In evaluating proposed class counsel, a court must consider: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class. *See* **Fed.R.Civ.P. 23(g)(1)(C)(i)**. Also, the court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." **Fed.R.Civ.P. 23(g)(1)(C)(ii)**. The court "may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs" and "may make further orders in connection with the appointment." **Fed.R.Civ.P. 23(g)(1)(C)(iii)-(iv)**.

Here, Defendants do not dispute that class counsel is adequate. The Court has reviewed the qualifications submitted by proposed class counsel. Further, the Court is very familiar with the law firm of Schlichter, Bogard & Denton and the

high caliber work that they perform. The Court finds that the law firm of Schlichter Bogard & Denton are highly qualified to proceed as class counsel.

## V. Conclusion

Accordingly, the Court **GRANTS** Plaintiffs' motion for class certification (Doc. 24). The class is defined as follows:

> All persons, *excluding the Defendants and/or other individuals who are or may be liable for the conduct described in this Complaint*, who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Plan in the future.

The Court **APPOINTS** Plaintiffs Gary Spano, John Bunk, and James White, Jr., as representatives of the class. Further, the Court **APPOINTS** the law firm of Schlichter, Bogard & Denton as class counsel. Lastly, the Court **DENIES as moot** Defendants' motion for oral argument on Plaintiffs' motion for class certification (Doc. 70).

**IT IS SO ORDERED.**

Signed this 26th day of September, 2008.

/s/    David R Herndon
**Chief Judge**
**United States District Court**