UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GARY SPANO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No: 06-743-DRH |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOEING COMPANY, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
AMENDED MOTION FOR CLASS CERTIFICATION**

**I.    Introduction**

As acknowledged by Defendants in their pending Motion for Summary Judgment, there

are several basis upon which Plaintiffs allege Defendants violated their duties of prudence and

loyalty to the Plan.  At their essence, these allegations are that: (1) Defendants caused the Plan to

pay unreasonable administrative fees to its recordkeeper, CitiStreet; (2) Defendants imprudently

included, among the Plan's 11 investment options, four mutual funds, when superior institutional

investment products were available; (3) that these same four mutual funds charged excessive fees

which included kickbacks to CitiStreet in the form of revenue sharing; (4) that among these four

options, the Technology Fund was included in the Plans even though it was undiversified and

imprudent for a retirement plan, and the Small Cap Fund was included even though it failed

Defendants' standards of prudence, because it provided additional revenue sharing fees to

CitiStreet; and (5) that the Boeing Company Stock Fund imprudently held high levels of low-

yielding cash, allowing State Street to place the cash in its own funds and receive multiple layers

of fees.  *See* Pltf. Opp. Mtn. Sum. Jgmt., Doc. 223.

The Seventh Circuit vacated the class certification order and remanded for further

proceedings to consider the requirements of Rule 23(a) and Rule 23(b). Doc. 306-2, p. 36.[1] The

Seventh Circuit's order focused on the class definition, stating that "the most important part of

[the class certification] order is the place where it defines the class." *Id*. at 20. The Court found

that numerosity, commonality, and adequacy of counsel were met. *Id*. at 23-24, 26. However,

the Court held that the class definition was too vague to allow a determination as to typicality

and adequacy of the named plaintiffs. *Id*. at 25-27.

      The Court expressly left open the question of whether a more tightly-defined class may

be certified under Rule 23(b)(1):

> Nothing we have said should be understood as ruling out the possibility of class
> treatment for one or more better-defined and more-targeted classes. Whether, for
> such a class or classes, the strict requirements of Rule 23(b)(1) can be met will
> depend on the new class definition.

*Id*. at 29. The court noted that Rule 23(b)(2) or (b)(3) certification also could be appropriate

depending on the circumstances.

      Following *Spano*, Plaintiffs set forth below each claim they are pursuing in this action

and the definition of the class they seek to represent as to each claim. In Section II, Plaintiffs

demonstrate, for each claim, that the proposed class satisfies the disputed elements of Rule 23(a),

typicality and adequacy of the named plaintiffs.[2] In Part III, Plaintiffs demonstrate why each

class should be certified under Rule 23(b)(1)(A) and (B), and why each class alternatively could

be certified under Rule 23(b)(2), or Rule 23(b)(3).

## II.    Plaintiffs' Claims and Proposed Class Definitions

### a.  Administrative Fee Claim and Class

Defendants caused the Plan to pay unreasonable administrative fees to its recordkeeper,

---

[1] The slip opinion included with the Mandate, Doc. 306-2, is referred to herein as "Slip op."
[2] Plaintiffs rely on their Motion as well as their original briefing concerning class certification, Docs. 24, 25 and 68, and this Court and the Seventh Circuit's decisions regarding the undisputed requirements of Rule 23(a).

CitiStreet. Doc. 223, p. 23. The Plan paid CitiStreet for its recordkeeping services in three ways: (1) through "hard dollar" recordkeeping fees charged to all participants which started at $3.50 and increased to $13.00 (Def.App. 0921-23)[3]; (2) through "soft dollar" revenue sharing payments which represented a percentage of assets in certain investment options, including each of the four mutual funds; and (3) through float interest earned on their accounts and transactions. Pltf. App. 0651-56; Def. App. 0361, 0380-81; Pltf. App. 1113-14. Through this arrangement, Defendants caused administrative fees and investment management fees to be commingled into an asset-based fee for the benefit of CitiStreet.  Pltf. App. 0352, 0378, 0381, 0523, 1109; Def.App. 0454-60. The total of these sources of compensation to CitiStreet resulted in per-participant recordkeeping fees ranging from $50.90 - $103.11 per year, even though a plan of this size should have paid only $37.17 - $42.57. (Doc. 223, p. 34). During the class period, the plan participants collectively paid over $35 million in excessive recordkeeping fees. Pltf.App. 223-226. Plaintiffs seek to recover that excess as the Plan's losses from Defendants' failure to negotiate reasonable recordkeeping compensation. Second Amended Complaint, Doc. 186, ¶¶ 154-167. The total recovered loss should be allocated among class members in proportion to the amounts they contributed out of their accounts to recordkeeping fees from the above-described three sources.

Every participant in the plan paid excessive recordkeeping fees. Plaintiffs seek to represent the following class:

> All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who had an account balance at any time between September 28, 2000 and December 31, 2006, as all participants during that time paid recordkeeping fees.

---

[3] Def. App. Refers to Defendants' Appendix (Doc. 213); Pltf App. Refers to Plaintiffs' Appendix (Doc. 224) filed in support of their Opposition to Summary Judgment.

The starting date for the class is September 28, 2000 because that date is six years prior to commencement of this action. Doc. 1, 29 U.S.C. § 1113. As to the ending date, Defendants' recordkeeping fees were reduced to reasonable levels, and revenue sharing eliminated, by December 31, 2006. Doc. 223, pp. 34-35. The proposed class meets the Rule 23(a) requirements in dispute for the claim.

### i.  Typicality

Every participant in the Plan paid recordkeeping fees, regardless of her chosen investment options. Def.App. 0921-23. Every participant will recover her pro-rata share of the excessive portion of that fee. Each participant's claim is perfectly "congruent" with the claims of the other unnamed members of the class, allowing the named party to litigate on behalf of the group. Slip op. at 25. Plaintiffs Spano, Bunk and White each were participants in the Plan during the entire class period. Among their investments, Plaintiff Bunk invested in the Boeing Company Stock Fund and the Small Cap Fund, Plaintiff Spano invested in the Growth Fund and the Technology Fund, and White invested in the Growth Fund, Value Fund, Technology Fund and Small Cap Fund (all four of the mutual funds in the Plan), all of which paid revenue sharing in addition to the per participant and float compensation paid by all participants to CitiStreet. *See, e.g.*, Ex. 1, Participant Account Statements.

The Named Plaintiffs and each member of the class have an identical claim, that Defendants breached their fiduciary duties by permitting CitiStreet to receive recordkeeping compensation from the Plan that, in total, was excessive. Having themselves paid these recordkeeping fees, Plaintiffs' claims thus are typical of the class claims satisfying the typicality requirement of Rule 23(a)(3).

### ii. Adequacy

No conflict exists between the named representatives and the unnamed class members on this claim. No class member would be harmed by the relief and, potentially, each class member has a complaint concerning the excessive fees. Each class member paid fees to CitiStreet, and CitiSteet's fees were unreasonable. Since the relief will be to refund the excessive fees to the Plan, which will be distributed to participants based on the total amount of administrative fees they paid, no participant will be harmed by the relief.  Further, it is notable that the revenue sharing payments to CitiStreet stopped in 2006 and are not, to Plaintiffs' knowledge, in effect today. *See*, Doc. 223, p. 18. Per participant fees have also been reduced. This further supports the fact that no participant will be harmed by the recovery of excessive fees.

### b. The Mutual Fund Claim and Sub-Class

The four mutual funds in the Plan were imprudent investments because participants in each of the four funds paid excessive fees. These fees were excessive in that they: (1) included secret 'revenue sharing' kickbacks to the Plans' recordkeeper, CitiStreet; (2) would have been lower had the fiduciaries chosen comparable, far lower priced and easily available separate accounts instead of mutual funds;[4] and (3) were not reasonably expected to (and in fact did not) outperform far lower priced index alternatives which guaranteed a market return. The funds were in the Plan only because Defendants contractually obligated the Plan to include four mutual funds as investment options. Pltf.App. 0007, 0012-14; Def.App. 0358-80. Defendants finally removed that contractual obligation and removed the mutual funds on December 31, 2005,

---

[4] It is well known in the investment management industry, and published by the Department of Labor, that separately managed account can commonly be found for ¼ the cost of mutual funds. Pension and Welfare Benefits Administration Study of 401(k) Plan Fees and Expenses, April 13, 1998, page 17, available on the DoL's website at: http://www.dol.gov/ebsa/pdf/401krept.pdf.

replacing them with separately managed accounts, the very investment vehicles that should have been in the Plan all along. Doc. 223, p. 18.

    Plaintiffs seek to represent the following sub-class regarding this claim:

> <u>Mutual Fund Subclass</u>: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005, invested in any of the Plans' mutual funds, since each mutual fund during this time were laden with imprudently excessive fees.

    As with the overall class, the mutual fund subclass begins six years prior to the commencement of this action. Doc. 1; 29 U.S.C. § 1113. The class period ends on the date Defendants finally removed the mutual funds and transferred the assets to separate accounts. Doc. 223, p. 18; Pltf.App. 0367, 0521, 0525, 0622-34, 0825, 1734.

### i. Typicality

    All mutual fund sub-class members were in invested in options that: (1) paid revenue sharing to CitiStreet; (2) were mutual funds instead of far less expensive, institutionally priced separate accounts; (3) were requirements of Defendant's contract with CitiStreet. Since each of the four mutual funds shared these imprudent characteristics, and it was the decision to include them as a group that was imprudent, a class representative need only have invested in one of the disputed mutual funds during the time period. *See* Slip op. at 25 (pointing out that plan-wide class included participants who "never held a single share in *either* or both of those funds") (emphasis added); *id.* at 33 (requiring "a representative who personally held *one* or both of the allegedly imprudent funds"). Each participant who invested in a mutual fund in the Plan paid excessive fees, and the relief sought by the named plaintiffs will compensate each class member for the excessive fees paid based on the amount of time and amount of money the participant invested in each mutual fund.

Every participant who invested in one or more of these funds paid the imprudent fees and everyone in the subclass was harmed.[5]  No one in the subclass benefitted from the excessive fees. Further, the mutual funds were all removed from the Plan on December 31, 2005. No member of the class would be harmed by either recovery of the excessive fees paid or injunctive relief preventing such imprudent investment structures from being added in the future.[6]

### ii.   Adequacy

Plaintiffs Spano, Bunk and White are adequate representatives of the subclass.  They have no conflict of interested with the unnamed class members because all subclass members paid excessive fees and share an interested in seeing their excessive payments returned to them. Additionally, Boeing removed the mutual funds in favor of the separate account structures Plaintiffs' contend should have been used all long.  Accordingly, this action will not cause any participant to lose access to mutual funds they might rather invest in because such options no longer are available to them.

### c.   The Small Cap Fund Claim and Sub-Class

In addition to the reasons stated above that apply to all mutual funds, the Small Cap Fund was a particularly imprudent choice for the Plan. In violation of ERISA's stringent requirement that no interests whatsoever other than participants' can play any part in a fiduciary's decision, Defendants' main motivation for including the SSgA Small Cap Fund was to further Boeing's corporate relationship with State Street. Doc. 223, p. 15. In the Small Cap Fund, Defendants selected a high priced mutual fund in which Plaintiffs were charged 1.07% (107 basis points) per

---

[5] As discussed above, Plaintiff Spano invested in the Growth Fund and the Technology Fund (Ex. 1, Boeing-Spano 0056), Plaintiff Bunk invested in the Small Cap Fund (Ex. 1, JB00372) and Plaintiff White invested in the Growth Fund, Value Fund, Small Cap Fund and the Technology Fund (Ex. 1, JW00128).

[6] The Seventh Circuit suggested that "some members will actually be harmed" by the plaintiffs' action, but did not discuss how a recovery from the fiduciaries of the Plan's losses (i.e., increasing plan assets) would harm any participant.  This is particularly true for the Class and the mutual funds subclass, as the excessive plan administrative fees and the mutual funds have both been removed from the Plan, a fact presumably not known to the Seventh Circuit.

7

year in fees and expenses even though, unknown to participants, less than 15 basis points – 14% of the fee - was spent on investment management. *Id*. Defendants did not know and did not inquire into how much of the 107 basis point fee was being secretly diverted and guessed it was only 35 basis points.  Pltf. App. 1104. In reality, as Defendants first learned in depositions for this case, 92.5 basis points were diverted! Doc. 223, p. 15. This left only a miniscule portion to be used for the benefit of the Small Cap Fund investors. A prudent alternative existed, the small cap commingled trust already vetted by the fiduciaries. Over the class period, participants lost millions of dollars because of these excessive fees. Pltf. App. 0024. That option was removed from the Plan on December 31, 2005.

Accordingly, Plaintiffs propose the following subclass:

Small Cap Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005, invested in the Small Cap mutual fund in the Plan.

### i.  Typicality

Each participant in the subclass paid the exact same percentage fee for the exact same investment product and identical returns. The Seventh Circuit recognized this, and found typicality satisfied where there is "a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent."  Slip op. 26. Plaintiffs Bunk and White invested in the Small Cap Fund, with Mr. White's investment extending for at least four years during the class period. Ex. 1 at JB0372, JW0128, JW0115, JW00092, JW00082, JW00076. Accordingly, the requirements of typicality are satisfied.

Defendants' conduct is judged based on whether Defendants selected and maintained options which were prudent and in the economic interest of the Plan, not whether they were in the economic interest of Mr. White or any other particular participant.

Plaintiffs seek recovery from the fiduciaries of the Plan's losses. No class members would be harmed by the relief sought. This would increase the Plan's assets, which would not harm any participant.  Even if a few participants somehow obtained good performance during the time they were in the Fund, they still paid excessive fees. Further, those participants would not be asked to return any money because their gain did not harm the Plan or any other participants in the Class. Moreover, if a handful of participants, though luck, skill or clairvoyance, ultimately beat the benchmark despite the fiduciary's imprudent decisions, that does not mean that the funds were prudent as to those individuals. "[W]hether a fiduciary's actions are prudent cannot be measured in hindsight, whether this hindsight would accrue to the fiduciary's detriment or benefit." *DeFelice v. U.S.Airways*, 497 F.3d 410, 424 (4th Cir. 2007).

### ii.  Adequacy

As indicated with respect to the Mutual Fund Subclass, Plaintiff James White was an investor in the Small Cap Fund and is a member, and adequate representatives of, the Small Cap Subclass.  Mr. White has no conflict with other subclass members because, like all subclass members, he lost money because of Defendants' decision to include the imprudently expensive Small Cap fund.  Also, like all subclass members, Mr. White is no longer invested in the fund, which was removed from the Plan at the end of 2005. Accordingly, the sub-class period ends on December 31, 2005. No class members will be harmed by Plaintiffs' relief. Accordingly, Plaintiffs and Mr. White meet the Rule 23(a)(4) requirement of adequacy.

### d.  The Technology Fund Claim and Sub-Class

At its core, Plaintiffs allege that the Technology Fund was imprudent because it was imprudently selected, undiversified and excessively (and unnecessarily) risky.  Defendants knew that participants were, predictably, using the Technology Fund to chase the technology bubble

9

even while the fund itself became increasingly volatile, yet Defendants' fiduciary concern consisted only of their theory that "[a]n individual has the right to shoot themselves (sic) in the foot if they so desire. They pay the price." Pltf. App. 0349; Doc. 223, p. 3. Far from the ERISA requirement that a fiduciary include only options that are in the economic best interest of plan participants, Defendants persisted in offering a Technology Fund that they knew to be excessively risky, undiversified and imprudent for a retirement plan. Over the class period, participants lost approximately $2 billion because of this excessive and unjustified risk when compared to a prudently diversified investment. Pltf.App. 003-39. Accordingly, Plaintiffs' propose the following subclass.

> Technology Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005 invested in the Plan's Technology Fund and whose investment in the Technology Fund underperformed that of the diversified domestic equity market as represented by the Standard and Poor's 500 Index Fund minus 5 basis points for investment management.

### i.  Typicality

Here again, the class period begins six years before the filing of this action and ends with the removal of the Technology mutual fund. Because the class definition applies only to those participants and beneficiaries who invested in the Technology Fund during the time period in suit, *Spano*'s concern over the inclusion of "many participants in the past (and who knows about the future) [who] never held a single share in either or both of those funds", slip op. at 25, is inapplicable.

Named Plaintiff White, an investor in the Technology Fund from the beginning of the class period until 2005, brings claims typical of the class, as does Named Plaintiff Spano, an investor in the Technology Fund in earlier portions of the class period. Ex. 1 at JW00133,

JW0128, JW0115, JW00092, JW00082, JW00076, Boeing-Spano 0056. Namely, they claim Defendants violated their duties under ERISA and the Plan's Investment Policy Statement by including an undiversified, risky, and ill-suited investment option for reasons other than the economic interest of Plan participants and failed to remove the option despite its continued imprudence, and that he lost money as a result of that investment. The Named Plaintiffs' investment and loss clearly satisfy the "congruence" required by the Seventh Circuit for a finding of typicality.  Slip op. 26. If the subclass is successful, Mr. White and Mr. Spano, like every other member of the subclass, will receive compensation for the difference between the returns he achieved and those of a prudently diversified market alternative.

### ii.  Adequacy

As indicated with respect to the Mutual Fund Subclass, Plaintiff White invested in the Technology Fund from the beginning of the Class Period until 2005, during which time the Technology Fund underperformed its prudently diversified alternative. Pltf.App. 009-11, 127. Mr. Spano invested in the Technology Fund at the beginning of the class period, having left the fund before January 1, 2002. Under *Spano*, adequacy is met provided members of the class would not "actually be harmed by" the relief sought. Slip op. 27. Plaintiffs seek recovery from the fiduciaries of the class members' losses. Doc 186, ¶ 154. This would increase the plan assets, which would not harm any participant. Every member of the Technology Fund subclass would receive a benefit in proportion to their loss and no plan participant would be harmed by the recovery. Even if a few participants had a gain during the time they were in the Technology Fund, those participants are excluded from the subclass definition and would not be asked to return any money because any such gain did not harm the Plan or any other participants in the

Class. Accordingly, Plaintiffs, and Mssrs. White and Spano, meet the Rule 23(a)(4) requirement of adequacy.

### e.   The Company Stock Fund Claim and Sub-Class

Defendants breached their fiduciary duties in managing the Boeing Stock Fund in that the manner in which Defendants ran the fund required the Plan to pay "investment management fees" to State Street. State Street received "management" fees of between 1 and 1.5 basis points depending on the amount of assets in the Stock Fund. Pltf. App. 1767-78, 1779-92. Investment management of an employer stock fund is not necessary, as the fund invests only in company stock. Pltf.App. 14-18. Thus, State Street's role was only to decide the cash levels in the fund, but it did so not only for a fee, but also to move assets into its own State Street managed Short Term Investment Fund, with an additional fee to State Street of 18 basis points. Def. App. 0455. The Short Term Investment Fund in turn invested its assets in the State Street's own Yield Plus and Money Market Funds, for which State Street charged management fees of 11 and 15 basis points respectively. Thus, the cash in the Stock Fund unnecessarily undermined participants' returns, both because of the fees paid to State Street and because of the opportunity cost of being invested in cash instead of Boeing Company Stock. Doc. 223, pp. 21-23. As a result of the mismanagement of the unitized stock fund, the balances of plan participants were more than $307 million less than if they had held Boeing stock directly. Pltf.App. 22-23, 28.

As with the Technology Fund, the Seventh Circuit was concerned that the prior class definition included participants outside of the statutory period, participants who never invested in the Company Stock Fund, and participants who actually benefitted from the alleged imprudent cash holdings. That would only be true for short periods when the miniscule return on cash, after these layers of fees, outperformed Boeing Stock, the prudent investment alternative.

The class of participants bringing this claim is limited in time, limited to participants who invested in the Company Stock Fund, and excludes any participants who benefitted from the imprudent decision to offer this fund with its excessive cash holdings and layers of fees on cash. Plaintiffs' proposed subclass ends on December 31, 2006, the last date of expert testimony concerning the excessive cash holdings. Accordingly, Plaintiffs propose the following class:

> <u>Company Stock Fund Subclass</u>: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2006 invested in the Plan's Boeing Company Stock Fund and whose investment in the Boeing Company Stock Fund underperformed that of Boeing Company Stock.

### i. Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Plaintiffs allege the Company Stock Fund was imprudently run in that it paid excessive fees to State Street and held excessive levels of cash which acted as a drag, reducing the performance of the fund when compared to Boeing stock itself. Plaintiffs' proposed Company Stock Fund subclass is restricted to participants who were invested in Company Stock Fund during the statutory and discovery period and who suffered a monetary loss to their individual accounts as a result of Defendants' breaches of fiduciary duties unique to that option.

Plaintiffs Bunk and Spano were invested in the Company Stock Fund during a period in which the Fund underperformed Boeing Company Stock, its prudent alternative. Ex. 1 at Boeing-Spano 0056, 0062, JB00372; Pltf.App. 28. Plaintiffs seek to recover the difference between their performance and the performance they would have had had the company stock fund been prudently managed. These claims are typical of the class, which includes only those participants who lost money as a result of Defendants' imprudent management and design of the Fund.

13

### ii.  Adequacy

Here again, there is no conflict of interest between the participants and no members of
the class would be harmed by Plaintiffs' recovery. The subclass includes only those participants
who lost money as a result of Defendants' imprudent decisions (the vast majority of all Company
Stock Fund investors) and recovery would be paid by Defendants to each of these participants in
proportion to their loss. All class members have identical interests in reducing fees and
controlling cash-drag in their company stock fund investments. Accordingly, Plaintiffs, including
Mr. Bunk and Mr. Spano, satisfy adequacy.

### III. The Class and Each Subclass Meet the Requirement of Rule 23(b)

After satisfying the requirements of Rule 23(a), Plaintiffs must meet the requirements of at
least one of the subsections of Rule 23(b).  Rule 23(b)(1) (A) allows for certification when the
prosecution of separate suits by the individual class members would create a risk of inconsistent
or varying adjudications and establish incompatible standards for the Defendants.  Rule
23(b)(1)(B) allows certification when a judgment in one suit would be dispositive of the interests
of the other class members who were not a party to the suit.  The drafters of Rule 23(b)(1)
described suits such as this one – an action for breach of fiduciary duty brought by those to whom
the duty is owed – as a prime example of why Rule 23(b)(1)(B) was enacted.  Committee Notes,
Fed. R. Civ. P 23(b)(1)(B) (1966 amendments).  Certification of the Class and each subclass is
appropriate under Rule 23(b)(1).

In the alternative, Plaintiffs seek certification under Rules 23(b)(2) and Rule 23(b)(3).
Rule 23(b)(2) permits certification when the party opposing the class "has acted or refused to act
on grounds generally applicable to the class, thereby making appropriate final injunctive relief or
corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).
Because the Defendants' breaches took place at the Plan and/or the Master Trust level, and

because the remedy will necessarily be implemented at the Plan and/or the Master Trust level, the Defendants "acted … on grounds generally applicable to the class."  Additionally, Defendants previously contended that Plaintiffs' claims are equitable in nature and avoided a jury trial as a result. Doc. 31, p. 13 ("Trust law is the province of courts of equity rather than courts of law… [t]hus, it is hardly surprising that eleven circuits, including the Seventh Circuit, have held that claims advanced under Section 502 of ERIS are equitable rather than legal claims."); *See also*, Doc. 66. Accordingly, certification under Rule 23(b)(2) is appropriate.

Even if certification were not proper under Rule 23(b)(1) or (b)(2), certification would be appropriate under Rule 23(b)(3).  Rule 23(b)(3) provides for certification when common issues of law or fact predominate and when class treatment is superior to addressing the dispute through thousands of individual actions.

### a.  Rule 23(b)(1)

The Seventh Circuit also commented on the requirements of Rule 23(b)(1).  The Court noted that the Third Circuit, in *Schering*, had found it "fairly easy to conclude that the plaintiffs had presented a case that met the criteria of Rule 23(b)(1)(B)" but that the *Schering* class definition only included participants in the one fund at issue in that case. Plaintiffs' revised class definition and each of the subclasses meet the standards of *Schering* supported by the Seventh Circuit.  Slip op. 28.

Indeed, the Seventh Circuit seemed to acknowledge that its only concerns to certification under Rule 23(b)(1)(B) were where "the alleged conduct harmed some participants and helped others."  Slip op. 29.  As explained above, even if this had been the case before with Technology Fund and Company Stock Fund subclasses, each of these subclass definitions now excludes such participants.  Accordingly, an adjudication of one subclass member's claim "as a practical matter, would be dispositive of the interest of the other members not parties to the individual

adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B).

The Rule 23 Advisory Committee noted that "an action which charges a breach of trust… by [a] … fiduciary similarly affecting the members of a large class of… beneficiaries" calls for certification under Rule 23(b)(1). *See also Ortiz v. Fibreboard Corp*., 527 U.S. 815, 833-34 (1999) (citing same). An ERISA breach of fiduciary duty action is even better suited for Rule 23(b)(1) treatment than an ERISA claim for benefits exactly because §502(a)(2) requires that participants bring fiduciary breach claims in a representative capacity. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985); *Thornton v. Evans*, 692 F.2d 1064, 1079 (7th Cir. 1982).

In addition to setting the framework for certification under Rule 23(b)(1)(B), the Seventh Circuit briefly addressed the standards for certification under Rule 23(b)(1)(A).  That rule applies where "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A). An order holding that the Technology Fund was imprudent would apply to all participants in the Plan, whether or not they are members of the class.

### b.  In The Alternative, The Class Should Be Certified Pursuant To Rules 23(b)(2) and (b)(3).

If the Court finds that certification under Rule 23(b)(1) is proper, then there is no need to consider, as an alternative, certification under Rule 23(b)(2) and (b)(3). *Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane*, 7AA Fed. Prac. & Proc. Civ. § 1772 (3d ed.) (collecting cases); *see also Piazza*, 273 F.3d at 1352 (holding district court abused discretion in certifying class for ERISA fiduciary breach claim under Rule 23(b)(3) rather than Rule 23(b)(1), because certification under Rule 23(b)(3) would allow class members to opt out and bring multiple suits,

which was prejudicial to the defendants). However, if the Court finds any of these claims did not satisfy Rule 23(b)(1), they satisfy Rules 23(b)(2) or 23(b)(3).

### i. Plaintiffs' Claims Can Be Certified Under Rule 23(b)(2).

Class certification is proper under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) is intended for suits where broad, class-wide equitable relief is necessary to redress a group-wide injury.

Plaintiffs here seek several types of Class-wide injunctive and other equitable relief. They seek a determination that the Plan operates in violation of ERISA, and ask the Court: to change such operations in the future; to "declare that the Defendants have breached their fiduciary duties"; to "order the Defendants to make good to the Plan all losses that the Plan incurred"; to "enjoin the fiduciaries who have breached their duties from future breaches of ERISA"; and to award "equitable restitution or other available equitable relief against the Defendants."  *See* Doc. 186, pp. 44-45. This is "group-wide relief" seeking to redress "group-wide injury."  Indeed, as noted above, ERISA § 502(a)(2) *compels*  Plaintiffs to bring this sort of case for "group-wide" relief.  *Russell*, 473 U.S. at 144.

For this reason, federal courts have determined that ERISA suits regarding benefits provided to all plan participants are properly certified under Rule 23(b)(2).  In *Global Crossing*, the court certified a class under Rule 23(b)(2) comprised of participants who suffered losses due to fiduciary breaches in a 401(k) company stock fund because the "ERISA Class Members' claims are based on alleged conduct that purportedly applies generally to the ERISA Classes." *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

17

In granting Rule 23(b)(2) certification, the court reasoned that defendants' actions were generally applicable to the class:  the defendants failed "reasonably to evaluate whether [company] stock was a prudent investment for the plans, fail[ed] to monitor the plans' fiduciaries, fail[ed] to disclose material information about [company] stock as a retirement investment, and  fail[ed] properly to administer the Change of Control Severance Plan."  *Id.*   In this case, Plaintiffs make the same sort of allegations:  that Defendants acted on a class-wide basis by failing to ensure that Plan investment options were prudent when the fees and cash were taken into account (*see* Doc. 186, ¶¶ 11, 90-93, 133), failed to monitor the Plans' fiduciaries (*Id.* at ¶ 147), and failed to disclose material information about the fees and expenses charged to the Plans (*Id.* at ¶¶ 134-143, 147, 149).  Plaintiffs' claims for injunctive relief should be certified pursuant to Rule 23(b)(2).

### ii.   In the alternative, certification is proper under Rule 23(b)(3).

Rule 23(b)(3) allows a class action if "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The common questions of law and fact in these claims – who were the fiduciaries, whether they failed to discharge their duties with respect to the Plans prudently and loyally, whether investment options were imprudent, etc. – predominate over any individual questions. A class action is not only the superior method for fairly and adjudicating these controversies, it may well be the only method.

### 1.   Common Issues Predominate

Rule 23(b)(3)'s requirement that common issues of law or fact predominate is closely related to the Rule 23(a)(2) "commonality" requirement.  This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc., v. Windsor,* 521 U.S. 591, 623 (1997).  Common issues predominate when the issues "subject to

generalized proof, and thus applicable to the class as a whole ... predominate over those issues
that are subject only to individualized proof."  *In re Mexico Money Transfer Litig.,* 267 F.3d 743,
746-47 (7th Cir. 2001) (citing the "predominance of common over individual disputes and
superiority of Class disposition" as "the requirements of Rule 23(b)(3)").

In an ERISA breach-of-fiduciary duty suit, courts focus on the defendants' behavior. *In
re Schering Plough Corp ERISA Litig*., 589 F.3d 585, 599 n.11 (3d Cir. 2009). The Plan's
fiduciaries do not select investment options or service providers for each participant individually,
but for the Plan as a whole and/or for the Master Trust. The service providers do not enter
administration and recordkeeping contracts with each Plan participant, but with the Plan as a
whole and/or with the Master Trust. The investment managers do not base their fees on
negotiations with each participant but on a fund-wide basis so that they are applicable to all Plan
participants. *See Rogers v. Baxter Intern. Inc.*, 2006 WL 794734, at * 12 (N.D.Ill. March 22,
2006) (finding predominance and certifying a Rule 23(b)(3) class where the plaintiff claimed that
"the defendants breached their fiduciary duties … by virtue of the way they managed or failed to
manage the Plan.").[7]

## 2.   A Class Action is the Best Means of Resolving Plaintiffs' Claims.

Finally, a class action is the superior method of litigating these claims.  Rule 23(b)(3)'s
"superiority" requirement asks the Court to consider: (A) the interest of members of the class in
individually controlling the prosecution or defense of separate actions; (B) the extent and nature
of any litigation concerning the controversy already commenced by or against members of the
class; (C) the desirability or undesirability of concentrating the litigation of the claims in the
particular forum; and (D) the difficulties likely to be encountered in the management of a class

---

[7] Plaintiffs are mindful of this Court's position with respect to District Court authority from outside of this District,
however, for the reasons stated supra, breach of fiduciary duty cases have been almost universally certified under
Rule 23(b)(1) and, accordingly, the rare opinions analyzing the Rule 23(b)(3) factors with respect to such claims are
illustrative if the Court finds certification is not proper under Rule 23(b)(1) or (b)(2).

action.  Fed. R. Civ. P. 23(b)(3). Class certification is "superior" when the "class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal citations omitted).

An administrative nightmare would result from thousands of separate suits by class members, some or all of which seek plan-wide relief. Concentration of all litigation about the Plan's fiduciaries and their duties in this forum would undeniably save the parties and the courts considerable effort. It will resolve questions about the operation of the Plans with one decision, rather than creating uncertainty with possibly contradictory orders. Plaintiffs are not aware of other actions in other forums presenting the issues that are before this Court. Thus, it is extremely desirable to concentrate the litigation of these common issues in this Court.  *See also Rogers*, 2006 WL 794734, at *12. Further, because the common issues predominate, the action will be manageable.  *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 190 (S.D.N.Y. 2005) (citing predominance as evidence of manageability). Rule 23(b)(3) certification is thus proper.

Determination of fiduciary status, fiduciary liability, fiduciary removal, and plan losses (among other issues) is much more efficiently done in a single class action than in several actions by each plan participant, making a class action "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Therefore, if for any reason the Court rejected certification under Rules 23(b)(1) or (2), certification under Rule 23(b)(3) is entirely appropriate and necessary to adjudicate Plaintiffs' claims.

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON

By:   /s/ Jerome J. Schlichter
    Jerome J. Schlichter
    Mark G. Boyko
    Jason Kelly
    Sean Soyars
    Heather Lea
    100 South Fourth Street, Suite 900
    St. Louis, MO 63102
    Tel: 314-621-6115
    Fax: 314-621-7151
    120 W. Main Street, Ste. 208
    Belleville, IL  62220
    Tel: 618-632-3329

    Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served via electronic transmission on March 2, 2011 upon the following counsel of record:

Thomas E. Wack                              Of Counsel:
Jeffrey S. Russell                          Christopher Rillo
Carrie McNichols                            Schiff Hardin LLP
Bryan Cave LLP                              One Market Place
211 North Broadway, Ste. 3600              San Francisco, CA  94105
St. Louis, MO 63102
(314) 259-2000
Attorneys for Defendants
tewack@bryancave.com
carrie.mcnichols@bryancave.com
jrussell@bryancave.com


                                    _____/s/ Jerome J. Schlichter_____