## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| GARY SPANO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-0743-DRH |
| | ) | |
| THE BOEING COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFFS' ALTERNATIVE MOTION TO PURSUE A "DIRECT ACTION"

William J. Kilberg P.C.
Mark A. Perry
Paul Blankenstein
J. Nicci Adams
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Facsimile:  (202) 467-0539

Christopher J. Rillo
SCHIFF HARDIN LLP
One Market Spear Street Tower
Spear Street Tower, Suite 3200
San Francisco, CA 94105
Telephone:  (415) 901-8700
Facsimile:  (415) 901-8701

Thomas E. Wack
Jeffrey S. Russell
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile:  (314) 259-2020

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    PLAINTIFFS' "DIRECT ACTION" THEORY IS IN CONFLICT WITH
      SUPREME COURT PRECEDENT AND THE MANDATE IN THIS CASE................. 4

II.   PLAINTIFFS' "DIRECT ACTION" THEORY VIOLATES DUE PROCESS................. 7

CONCLUSION.................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abbott v. Lockheed Martin Corp.,*
  No. 06-701, 2010 WL 547172 ........................................................................... 4, 9

*In re AEP ERISA Litigation,*
  No. C2-03-67, 2009 WL 3854943 (S.D. Ohio, Nov. 17, 2009) ................................ 1

*Allen v. Int'l Truck and Engine Corp.,*
  358 F.3d 469 (7th Cir. 2004) .............................................................................. 14

*Amchem Prods., Inc. v Windsor,*
  521 U.S. 591 (1997).......................................................................................... 9, 10

*Ameritech Ben. Plan Comm. v. Commc'n Workers of Am.,*
  220 F.3d 814 (7th Cir. 2000) .............................................................................. 13

*Anderson v. AB Painting and Sandblasting Inc.,*
  578 F.3d 542 (7th Cir. 2009) .............................................................................. 15

*Butler Lime and Cement Co. v. Occupational Safety and Health Review Comm'n,*
  658 F.2d 544 (7th Cir. 1981) ................................................................................ 6

*Califano v. Yamasaki,*
  442 U.S. 682 (1979)........................................................................................... 10

*City of Riverside v. Rivera,*
  477 U.S. 561 (1986)........................................................................................... 15

*Coan v. Kaufman,*
  457 F.3d 250 (2nd Cir.) ...................................................................................... 13

*Daily Income Fund Inc. v. Fox,*
  464 U.S. 523 (1984)........................................................................................... 10

*Davis v. Hutchins,*
  321 F.3d 641 (7th Cir. 2003) ............................................................................ 9, 12

*Fish v. Greatbanc Trust Co.,*
  667 F. Supp. 2d 949 (N.D. Ill. 2009) ..................................................................... 9

*Gen. Telephone Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982)........................................................................................... 10

*George v. Kraft Foods Global, Inc.,*
  No. 08-3799, 2011 WL 5118815 (N.D. Ill. Oct. 25, 2011) ........................................ 9

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Hansberry v. Lee,*
    311 U.S. 32 (1940)............................................................................... 1, 7, 14

*Hardt v. Reliance Stand. Life Ins. Co.,*
    130 S. Ct. 2149 (2010)............................................................................. 15

*Hughes Aircraft Co. v. Jacobson,*
    525 U.S. 432 (1990).................................................................................. 5, 8

*Johnson v. Georgia-Pac. Corp.,*
    19 F.3d 1184 (7th Cir. 1994).................................................................... 8

*Jones v. Harris Assocs. L.P.,*
    130 S. Ct. 1418 (2010)............................................................................. 9

*Kamen v. Kemper Financial Services, Inc.,*
    908 F.2d 1338 (7th Cir. 1990).................................................................. 8, 9

*Kayes v. Pac. Lumber Co.,*
    51 F.3d 1449 (9th Cir. 1995)..................................................................... 10

*LaRue v. De Wolfe, Boberg & Assocs., Inc.,*
    552 US 248 (2008)..............................................................................*passim*

*Mass. Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985).................................................................................. 4, 14

*Mausolf v. Babbitt,*
    85 F.3d 1295 (1996)................................................................................... 13

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999).................................................................................. 2

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985)............................................................................*passim*

*In re Sanford Fork & Tool Co.,*
    160 U.S. 247 (1895).................................................................................. 6

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.,*
    130 S. Ct. 1431 (2010)............................................................................. 2, 10

*Smith v. Bayer Corp.,*
    131 S. Ct. 2368 (2011)............................................................................. 9, 12, 13

**TABLE OF AUTHORITIES**
**(Continued)**

<u>Page(s)</u>

*Spano v. Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ................................................................ *passim*

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ............................................................................. *passim*

*Tice v. Am. Airlines, Inc.*,
   162 F.3d 966 (7th Cir. 1998) ........................................................................ 9

*Waldron v. Dugan*,
   No. 07-286, 2007 WL 4365358 (N.D. Ill. Dec. 13, 2007) ........................ 8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................ 10, 15

**Statutes**

29 U.S.C. § 1002(34) ........................................................................................ 8

**Rules**

39 F.R.D. 69, 105 (1966) ............................................................................... 13

Fed. R. Civ. Pro. 1 .......................................................................................... 10

**INTRODUCTION**

In the alternative to their renewed motion for class certification, plaintiffs seek permission to bring the same claims, ostensibly on behalf of the same persons, under what plaintiffs misleadingly label a "direct action" theory. *See* Dkt. 311.  Under this theory, any individual Plan participant would be permitted to sue for and, if successful, recover losses allegedly sustained in the individual accounts of thousands of non-party participants, without meeting *any* of the procedural safeguards built into Rule 23 that are designed to protect the due process rights of defendants and absent persons.  Absent Plan participants would not be provided with notice that the action is pending, would have no right to opt-out of the action, and the named plaintiffs would not be required to establish that they would adequately represent the interests of those absent participants.  Indeed, under plaintiffs' proposed approach, even where an individual has been determined to be an *inadequate* representative of the unnamed participants in the Plan whose rights are at stake, that individual could still press the rights of those absent persons.  Dkt. 311 at 4 n.3 (citing *In re AEP ERISA Litigation*, No. C2-03-67, 2009 WL 3854943 (S.D. Ohio, Nov. 17, 2009)).

Plaintiffs' "direct action" theory is based on a fundamental misunderstanding of important differences between defined benefit and defined contribution plans (*see LaRue v. De Wolff, Boberg & Assocs., Inc.*, 552 US 248, 256 (2008)), flouts the Seventh Circuit's mandate in this case (*Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)), and contravenes well-established due process principles governing the adjudication of rights and claims held by non-parties (*Taylor v. Sturgell*, 553 U.S. 880, 900-01 (2008); *Hansberry v. Lee*, 311 U.S. 32, 44 (1940)).  It should be rejected for any or all of these reasons, and because it is unnecessary in the context of this case.

1

In federal court, Rule 23 provides the framework for collective adjudications.  *See Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (plurality opinion) ("Rule 23 provides a one-size-fits-all formula for deciding the class-action question").  Pursuant to the Rules Enabling Act, Rule 23 has been carefully formulated to protect the substantive and procedural rights of both named parties and absent persons.  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845-48 (1999).  Plaintiffs have recognized the applicability of Rule 23 by bringing this case as a putative class action and twice asking this Court to certify a class.  If they cannot carry their burden of formulating and supporting a class that meets the requirements of Rule 23, with its procedural safeguards for absent plan participants, then they simply cannot represent those individuals or seek to secure a judgment on their behalf.  *See Taylor*, 553 U.S. at 900-01. Therefore, plaintiffs' "direct action" motion should be denied and their ability to proceed on behalf of unnamed participants in the Boeing Plan should be resolved solely on the basis of their renewed motion for class certification, which is fully briefed and ready for decision.  *See* Dkts. 309, 340, 349, 358.[1]

## ARGUMENT

Plaintiffs seek, "[a]s an alternative to class certification," the Court's permission "to pursue this action for … damages" as a "direct action," which they maintain is authorized "in §§ 502(a)(2) and (a)(3) of ERISA and also follows from the legislative history of ERISA, Supreme Court precedent, circuit and district court decisions under ERISA and similar law."

---

[1] The individual plaintiffs in both this case and in *Beesley v. Int'l Paper Co.*, No. 06-703 (S.D. Ill.), have filed substantively identical motions to pursue a so-called "direct action" in the alternative to class certification.  *See Spano* Dkt. 311; *Beesley* Dkt. 359.  While the Court previously deferred Boeing's obligation to respond to plaintiffs' motion (*Spano* Dkt. 313 at 23:7-19), it has more recently observed that "there is nothing prohibiting Boeing from filing its response to the direct action motion in its own case" (*Beesley* Dkt. 437 at 3).  Boeing has therefore elected to respond at this time.

Dkt. 311 at 1.  Plaintiffs are wrong on all counts, and their "direct action" motion should be denied.

At the outset, the Court could profitably consider why, if plaintiffs had a "right" to pursue what they (misleadingly) call a "direct action," as they maintain (Dkt. 311 at 1), they need to seek leave to exercise that supposed "right."  The Court might also consider why, if such a "right" exists, plaintiffs filed this case as a class action, successfully persuaded this Court to certify their proposed class, unsuccessfully defended that certification in the Seventh Circuit, and then filed a renewed motion for class certification in this Court.  The short answer is that the "direct action" theory does not now, and has not ever, fit this case.  That is why it surfaced so late in the litigation—years after suit was filed, and after plaintiffs' initial bid for class certification was firmly rejected by the Seventh Circuit.  *See Spano*, 633 F.3d at 586-87.  Indeed, plaintiffs argued to the Seventh Circuit that failure to certify a class would "sound the death-knell for those claims" because individual participants would be required to pursue individually "his or her share of the plan's damages."  *See Spano v. Boeing Co.*, No. 09-3001 (7th Cir.), Brief of Plaintiffs-Appellees, at 40-41.  Plaintiffs' current assertion that, even in the absence of certification, they may seek to recover damages for all Plan participants directly contravenes their previous representation to the Seventh Circuit.

Moreover, plaintiffs failed to properly plead their "direct action" theory in the operative complaint, and thus have waived any ability to maintain the case on that basis.  The initial complaint and each of the amended complaints in this case recite that the named plaintiffs seek to bring the action "individually and on behalf of all those similarly situated," followed by express class action allegations.  See Dkt. 2, 109, 186.  None of plaintiffs' three complaints contains a single word about a "direct" or "representational" action.  Although plaintiffs suggest

that their jurisdictional and venue allegations—which state only that they "bring this action pursuant to ERISA §§ 502(a)(2) & (3)"—are sufficient to put Boeing on notice that they would pursue a "direct action" theory (Dkt. 311 at 1 n.1), Judge Reagan correctly concluded under indistinguishable circumstances that "[t]he absence of any discussion of the direct action theory in the amended complaint and the actual disavowal of an alternative mechanism for Plan-wide relief effectively waived the direct action theory." *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2010 WL 547172, slip op. at *3 (S.D. Ill. Feb. 10, 2010). Plaintiffs' tepid request for leave to amend their complaint yet again (Dkt. 311 at 1 n.1) is an implicit acknowledgment of this fact, and should be denied because plaintiffs have not provided good cause for amendment at this late date, because amendment would prejudice Boeing, and because amendment would be futile.

The Court could thus deny plaintiffs' "direct action" motion on timeliness and waiver grounds alone. Even if the Court were to consider the substance of the motion, however, it is meritless.

## I.   PLAINTIFFS' "DIRECT ACTION" THEORY IS IN CONFLICT WITH SUPREME COURT PRECEDENT AND THE MANDATE IN THIS CASE.

Plaintiffs assert that, in ERISA § 502(a)(2), "Congress chose to allow direct action by participants to recover all plan damages and remedies without any additional procedural requirements." Dkt. 311 at 5. This argument ignores the fundamental difference between a defined contribution plan, such as the Boeing 401(k) Plan at issue here, and a defined benefit plan—a difference that the Supreme Court has held has significant implications for the operation and litigation of ERISA's breach-of-fiduciary-duty provisions. *See LaRue*, 552 US at 255-56.

Plaintiffs' assertion that ERISA specifically permits a so-called "direct action" is based on their well-worn recitation that, under the Supreme Court's opinion in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), claims under ERISA § 502(a)(2) are brought in a

representative capacity to "protect the **entire plan**."  Dkt. 311 at 2 (emphasis in original); *see also id.* at 3 (arguing that "Section 502(a)(2) is focused on the 'common interest' of the . . . participants . . . 'in the financial integrity of the plan'").  But plaintiffs fail to acknowledge, or inform the Court, that the "entire plan" concept that they rely on has been confined to *defined benefit* plans.

As the Supreme Court explained in unequivocal terms in *LaRue*, "our references to the 'entire plan' in *Russell*, which accurately reflect the operation of [ERISA] in the defined benefit context, are *beside the point in the defined contribution context*."  552 US at 256 (emphasis added).  That is because in a defined benefit plan, set benefits are paid to participants from a general pool of assets.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999). Accordingly, "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *LaRue*, 552 U.S. at 255.  In a defined contribution plan, on the other hand, each participant is entitled to the value attributed to their individual account.  *See id*. at 250 n.1. "[F]iduciary misconduct [thus] need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive."  *Id*. at 255-56.

The Boeing 401(k) Plan at issue here is, of course, a defined contribution plan.  *Spano*, 633 F.3d at 582.  *LaRue*'s holding that the "entire plan" language in *Russell* simply is "beside the point in the defined contribution context" (552 U.S. at 256) thus obliterates the basis for plaintiffs' "direct action" theory.  Plaintiffs have no response to the Supreme Court's decision in *LaRue*.  Instead, they misleadingly assert that the Court "quoted and affirmed" *Russell* in *LaRue*. Dkt. 311 at 2.  To be sure, *LaRue* reaffirmed *Russell*'s applicability to defined benefit plans, but

it plainly held that that *Russell* is inapplicable to defined contribution plans.  Plaintiffs' refusal to acknowledge that point shows up the fatal flaw in their theory.

Not only is plaintiffs' argument contrary to Supreme Court precedent, but it also has been rebuffed by the Seventh Circuit.  In their attempt to defend the order granting certification of a Plan-wide class, plaintiffs argued to the Seventh Circuit that a "fiduciary owes its duties to the plan" and "[a]n action under § 502(a)(2) is an action on behalf of a plan."  *Spano v. Boeing Co.*, No. 09-3001 (7th Cir.), Brief of Plaintiff-Appellees at 10; *see also id.* at 13-14, 24-25, 35, 41. That is the exact argument that plaintiffs now make in support of their "direct action" theory. *See* Dkt. 311 at 2 (arguing that "fiduciary duties under ERISA are owed to the plan"), 3 (arguing that "[a]n action for breach of fiduciary duty is 'brought in a representative capacity on behalf of the plan as a whole'").  The Seventh Circuit rejected plaintiffs' argument, stating that "[i]t is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members will actually be harmed by that relief."  *Spano*, 633 F.3d at 587. The Plan-wide class failed because the relief sought would actually harm some Plan participants; a few individual plaintiffs may not visit that same harm on absent participants through a "direct action."

The "mandate rule" precludes plaintiffs from rearguing, and this Court from revisiting, points that already were resolved against these plaintiffs by the Seventh Circuit in this very case. *See In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895) ("When a case has been once decided by this court on appeal, . . . whatever was before this court, and disposed of by its decree, is considered as finally settled"); *Butler Lime and Cement Co. v. Occupational Safety and Health Review Comm'n*, 658 F.2d 544, 550 (7th Cir. 1981).  The core argument underlying plaintiffs' "direct action" motion was presented to the Seventh Circuit as a basis for sustaining

the original class certification order, and was rejected by the court of appeals. Plaintiffs' attempt to repackage that same argument in this Court cannot be reconciled with the Seventh Circuit's mandate.

## II.   PLAINTIFFS' "DIRECT ACTION" THEORY VIOLATES DUE PROCESS.

Judge Reagan explained in *Abbott* that allowing plaintiffs to proceed with their "direct action" theory, whereby they seek to recover for the alleged losses in the individual accounts of absent plan participants, "would be inappropriate" because "there are no procedural safeguards that the Court can put in place to protect absent members."  2010 WL 547172, slip op. at *3-4; *see also George v. Kraft Foods Global, Inc.*, No. 08-3799, 2011 WL 5118815, slip op. at *10-11 (N.D. Ill. Oct. 25, 2011) (rejecting plaintiffs' "direct action" theory as "overly myopic").  Judge Reagan was right.

The difference between defined benefit plans and defined contribution plans that the Supreme Court articulated in *LaRue*, and which the Seventh Circuit applied in *Spano*, has powerful due process implications.  It is beyond dispute that, as a general rule, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."  *Hansberry*, 311 U.S. at 40.  In addition, the Supreme Court has unequivocally held that unnamed parties may not be bound by a judgment unless their rights are sufficiently protected.  *Id.*  In order for absent parties to be bound by a judgment, "the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent [persons]."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also Hansberry*, 311 U.S. at 45 (a representative "whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires").  Indeed, the Seventh Circuit in *Spano* recognized that "there is a constitutional dimension to [the Rule

23(a) adequacy inquiry]; absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict of interest with them or was otherwise inadequate." 633 F.3d at 586-87. And "[a] party's representation of a nonparty is 'adequate' . . . only if, at a minimum . . . the interests of the nonparty and her representative are aligned." *Taylor*, 553 U.S. at 900.

In a defined benefit plan, all participants share the same interest—an undifferentiated interest in the assets of the plan as a whole. *See Hughes*, 525 U.S. at 439; *Johnson v. Georgia-Pac. Corp.*, 19 F.3d 1184, 1189 (7th Cir. 1994). In a defined contribution plan, however, each participant is entitled *only* to the value of his or her *individual* account, which may be affected by an alleged fiduciary breach in varying ways, if at all. *See* 29 U.S.C. § 1002(34); *LaRue*, 552 U.S. at 255-56. And after *LaRue*, each participant has a constitutionally protected property right to bring an action to recover for any alleged losses in that individual account. *See LaRue*, 552 U.S. at 256; *Shutts*, 472 U.S. at 807 ("[A] chose in action is a constitutionally recognized property interest"). Consequently, participants in defined contribution plans do not necessarily have interests that are "aligned." *See Spano*, 633 F.3d at 587.

Yet, the "direct action" theory advanced by plaintiffs offers *no* procedural protections for the interests of absent plan participants whose rights to monetary relief would be adjudicated in this proceeding. Indeed, the very premise of plaintiffs' motion is that, *without* meeting the Rule 23(a) prerequisites of typicality, commonality, or adequacy (which provide the necessary due process nexus), they still may represent the interests of all absent plan participants and seek monetary recovery on their behalf. Dkt. 311. Plaintiffs are wrong.[2]

---

[2] Plaintiffs' reliance on *Kamen v. Kemper Financial Services, Inc.*, 908 F.2d 1338 (7th Cir. 1990), and *Waldron v. Dugan*, No. 07-286, 2007 WL 4365358 (N.D. Ill. Dec. 13, 2007), suffers from the same problem as plaintiffs' other arguments—their failure to recognize the difference

The Supreme Court "could hardly have been more clear that a 'properly conducted class action,' with binding effect on nonparties, can come about in federal courts in just one way— through the procedure set out in Rule 23." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2381 (2011) (quoting *Taylor*, 553 U.S. at 901)); *see also Amchem Prods., Inc. v Windsor*, 521 U.S. 591, 620 (1997) ("[C]ourts must be mindful that [Rule 23] as now composed sets the requirements they are bound to enforce"). After all, "[t]here would be little point in having Rule 23 if courts could ignore its careful structure and create de facto class actions at will." *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 973 (7th Cir. 1998). In the absence of a historically rooted exception, Rule 23 provides the only means, consistent with due process, by which non-party absentees can be bound. *Taylor*, 553 U.S. at 895; *see also Shutts*, 472 U.S. at 812. Without a certified class, damages or other forms of relief cannot be awarded (or denied) to absent persons because entry of such a judgment would violate the non-parties' rights. *Davis v. Hutchins*, 321 F.3d 641, 648 (7th Cir. 2003). And where, as here, monetary damages are sought on behalf of absent persons, due process requires that they be given notice and an opportunity to opt out before judgment is

---

between a defined benefit plan and a defined contribution plan. *Kamen* addressed the right of a shareholder to bring an action against a mutual fund adviser for breach of fiduciary duty under § 36(b) of the Investment Company Act of 1940. 908 F.3d at 1348. A shareholder's interest in a mutual fund is analogous to a participant's interest in the assets of a defined benefit plan—an undifferentiated interest in the assets of the mutual fund as a whole. *See Jones v. Harris Assocs. L.P.*, 130 S. Ct. 1418, 1422 (2010). Therefore, even *if Kamen* could be read to have any applicability to ERISA actions, it could *at most* apply to actions involving defined benefit plans, not defined contribution plans, such as the Plan here. Similarly, the Apprenticeship and Skill Improvement Fund at issue in *Waldron* maintained certain property and assets for the benefit of *all* participants and beneficiaries. *See Waldron v. Dugan*, No. 07-286 (N.D. Ill.), Complaint, at ¶¶ 22-23, 27 (describing the Fund) (relevant portions attached hereto as Ex. A). Thus, like the mutual funds at issue in *Kamen*, the Fund in *Waldron* was akin to a defined benefit plan. *See Waldron*, No. 07-286, 2007 WL 4365358, slip op. at *5-6. Indeed, the only district courts within the Seventh Circuit to address plaintiffs' "direct action" theory in the context of a *defined contribution* plan have rejected the theory. *See Abbott*, No. 06-701, 2010 WL 547172, slip op. at *3-4; *George*, No. 08-3799, 2011 WL 5118815, slip op. at *10-11; *cf. Fish v. Greatbanc Trust Co.*, 667 F. Supp. 2d 949 (N.D. Ill. 2009).

9

entered.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558-59 (2011); *Shutts*, 472 U.S. at 812.

Plaintiffs argue that "[t]here is no suggestion in ERISA itself that fiduciary claims under section 409(a) and 502(a) need to meet the requirements of Rules 23.1, 23 or 19."  Dkt. 311 at 5. Of course, there is no such requirement in the vast majority of statutes, yet the Supreme Court has continually held that the requirements of those Rules must be met before plaintiffs may pursue a collective action.  *See, e.g.*, *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Amchem*, 521 U.S. at 620.  The Rules of Federal Procedure apply to *all* actions in federal court.  *See* Fed. R. Civ. Pro. 1; *Shady Grove*, 130 S. Ct. at 1437-38.[3]

Plaintiffs also insist that a "direct action" is appropriate because "Congress expressly considered, but rejected, requiring that all fiduciary breach claims be brought as class actions" and instead "chose [in § 502(a)(2)] to allow direct action by participants to recover all plan damages."  Dkt. 311 at 5.  But the fact that Congress chose *not* to require *all* fiduciary-breach claims to proceed as class actions supports Boeing, not plaintiffs.  *See Califano v. Yamasaki*, 442 U.S. 682, 700-02 (1979).  It defies common sense to think that Congress would reject an explicit requirement that all fiduciary-breach claims be brought as collective actions, yet cryptically word the fiduciary-breach provision with the intent of reaching that very same result.  *Id*. at 700 (the Rules of Civil Procedure apply to all actions unless there is a "direct expression by Congress of its intent to depart from" those Rules).  Moreover, even *if* ERISA § 502(a)(2) could be

---

[3]  Plaintiffs cite a number of opinions holding that Rule 23.1 is applicable only to derivative actions by shareholders on behalf of a corporation.  *See, e.g.*, Dkt. 311 at 4 (citing *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1462-63 (9th Cir. 1995)), 6 n.6 (citing *Daily Income Fund Inc. v. Fox*, 464 U.S. 523 (1984)), 7 (citing *Kamen*, 908 F.2d at 1348).  These opinions are irrelevant to this case.  Boeing has never suggested that this is a derivative action to which Rule 23.1 should apply; rather, plaintiffs must meet the requirements of Rule 23 if they are to proceed on behalf of unnamed persons, as the Seventh Circuit recognized in *Spano*.

interpreted in the manner that plaintiffs assert—and it cannot—the Supreme Court has been clear that a "statutory scheme may 'expressly foreclos[e] successive litigation by nonlitigants . . . [only] *if the scheme is otherwise consistent with due process*.'"   *Taylor*, 553 U.S. at 895 (emphasis added).  Plaintiffs' "direct action" theory does not meet that requirement.

The facts of *LaRue* provide a clear example of the substantial due process concerns associated with plaintiffs' "direct action" theory.  In *LaRue*, a single participant in a 401(k) plan brought an action for breach of fiduciary duty under ERISA § 502(a)(2), alleging that the plan fiduciaries did not carry out his investment instructions, which caused a loss of $150,000 in his individual account.  552 U.S. at 250-51.  The Supreme Court ruled that LaRue was entitled to bring such a claim under ERISA § 502(a)(2), even though the alleged loss was to his individual account only, and not shared by any other participant in the plan.  *Id*. at 256.  Under plaintiffs' "direct action" theory, any other participant in that plan could have brought this same action to recover "on behalf of the plan" the losses in LaRue's individual account.  That plaintiff participant would not have to notify LaRue of the action or even be deemed an "adequate representative" to prosecute the action, even though the plaintiff would have virtually no incentive to protect LaRue's interest in his individual account.

Plaintiffs attempt to avoid these serious due process concerns by arguing that absent participants would not be bound by an adverse judgment because an action under ERISA § 502(a)(2) "is [] an individual action; the participant represents no one other than herself."  Dkt. 311 at 8; *see also id*. at 9 & n.13.  But this position is irreconcilable with plaintiffs' theory that they may recover the alleged losses in *all* plan participants' individual accounts because they are bringing their claims "in a representative capacity on behalf of the plan as a whole."  Dkt. 311 at 3; *see also id*. (arguing that ERISA § 502(a)(2) "is not 'a remedy for individual beneficiaries'").

Common sense dictates that an action cannot be brought *both* as "an individual action" representing "no one other than herself" *and* "in a representative capacity on behalf of the plan as a whole."  If the named plaintiffs were truly content with representing "no one other than" themselves, they would not have needed to file their "direct action" (or renewed class certification) motions.  Plaintiffs' own actions establish that they are, in fact, asking this Court to adjudicate the rights of absent plan participants.[4]

Plaintiffs also claim that "[b]ecause this is not a class action and because of the abrogation of the doctrine of virtual representation, no rights of non-party participants will be affected by the doctrine of res judicata and there are no due process concerns."  Dkt. 311 at 8.  This too is incompatible with plaintiffs' "direct action" theory.  Plaintiffs cannot have it both ways—they cannot seek to recover money on behalf of absent persons (if they win) while simultaneously maintaining that those absent persons would not be bound by the judgment (if they lose).  Such a proceeding would violate *Boeing's* due process rights.  *If* plaintiffs can bring this action "on behalf of the plan as a whole" without satisfying Rule 23, as they assert in their motion, then principles of non-party preclusion would have to bind the absent participants to the judgment—win *or* lose.  *See Taylor*, 553 U.S. at 895 ("Preclusion is [] in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication [or when] . . . a nonparty later brings suit as an agent

---

[4]  If the action is considered to be in an "individual capacity," as plaintiffs also assert in their motion, then absent participants would not be bound unless a class is certified. *See Bayer*, 131 S. Ct. at 2379 ("The definition of the term 'party' can on no account be stretched so far as to cover a person like Smith, whom the plaintiff in a lawsuit was denied leave to represent").  And if a class is certified, there would be no due process concerns because satisfying the requirements of Rule 23 provides appropriate procedural safeguards to protect the rights of absent plan participants.  Of course, if the action is brought in an individual capacity and a class is not certified, plaintiffs can recover only the alleged damages in their individual accounts—not the alleged damages in all participants' accounts. *See Davis*, 321 F.3d at 648 (class damages may not be awarded without class certification).

for a party who is bound by a judgment"). Nothing in ERISA or general federal procedure tolerates the kind of "one-way" preclusion—in which absent participants would enjoy the benefits of a victory but would be unaffected by the detriments of a loss—that the named plaintiffs envision. *See Bayer*, 131 S. Ct. at 2379-80. In fact, Rule 23 was amended in 1966 in part to do away with precisely this kind of unfair proceeding. 39 F.R.D. 69, 105 (1966) ("[O]ne-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class").

Plaintiffs' arguments regarding the authority of the Secretary of Labor also cannot salvage their "direct action" theory. Plaintiffs assert that "[t]here is no[] limitation in the statute on the scope of relief the Secretary of Labor can obtain on behalf of [a] plan," and therefore "it follows that participants also are not limited in the scope of relief they can seek in behalf of the plan." Dkt. 311 at 3 n.2. But a claim for breach of fiduciary duty brought by the Secretary of Labor—or even a plan fiduciary—would not raise the same due process concerns as a suit brought by an individual plan participant, because the Secretary of Labor and plan fiduciaries have a duty to act in the best interest of *all* participants—a duty *not* shared by individual participants. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (1996); *Ameritech Ben. Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 825 (7th Cir. 2000).

Indeed, plaintiffs cite the Second Circuit's decision in *Coan v. Kaufman*, 457 F.3d 250 (2nd Cir. 2006), for the proposition that "ERISA does not require that [fiduciary-breach claims] be brought as a class action under Rule 23" (Dkt. 311 at 4), yet they run away from *Coan*'s holding that "plan participants must employ procedures to protect effectively the interests they purport to represent." 457 F.3d at 259; *see* Dkt. 311 at 8-10. Plaintiffs argue that "it is likely the Seventh Circuit  . . . would reject the due process concerns that motivated the *Coan* court" to

13

impose such procedural protections for absent plan participants.  Dkt. 311 at 10.  The Seventh Circuit, however, has already made clear that procedural protections—such as adequate representation—*are* required to protect the due process rights of absent participants in the Boeing Plan.  *See Spano*, 633 F.3d at 586-87.  In fact, contrary to their arguments to this Court (Dkt. 311 at 7-10), in their arguments to the Seventh Circuit plaintiffs recognized that some sort of procedural protections, such as those contained in Rule 23, are necessary so that the named plaintiffs do not "try to maximize the outcome for the[mselves] at the potential expense of the [absent participants]."  *Spano v. Boeing, Co.*, No. 09-3001 (7th Cir.), Brief of Plaintiff-Appellees at 23 (quoting *Allen v. Int'l Truck and Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004)).[5]

The Supreme Court has definitively prohibited "common-law kind[s] of class action[s] . . . shorn of Rule 23's procedural protections."  *Smith*, 131 S. Ct. at 2380 (internal alterations omitted); *see also Taylor*, 553 U.S. at 901 ("[I]n this area of the law . . . crisp rules with sharp corners are preferable to round-about doctrine of opaque standards").  Plaintiffs' "direct action" motion is just such an impermissible request for this Court to sanction an aggregated adjudication outside the rigorous procedural framework of Rule 23.  The short answer provided by the Supreme Court's many decisions in this area is that if plaintiffs are unable to define a class that meets the requirements of Rule 23, then they simply may not proceed on a collective basis.  *See, e.g.*, *Taylor*, 553 U.S. at 900-01; *Amchem*, 521 U.S. at 620-21.[6]

---

[5]  *Coan* was decided before the Supreme Court's decision in *LaRue* (*see Coan*, 457 F.3d at 259-62 (citing *Russell*, 473 U.S. at 140)), and its holding that a plaintiff need not meet the requirements of Rule 23 to proceed on a collective basis does not survive *LaRue*'s holding that *Russell* does not apply to defined contribution plans.  552 US at 256.

[6]  In their *Beesley* reply (Dkt. 451 at 3 n.5), these same plaintiffs' attorneys suggested that a "direct action" should be allowed because individual participants may not pursue actions for

\*       \*       \*

At base, plaintiffs' "direct action" theory is an attempt to circumvent the Seventh Circuit's prior opinion that the Plan-wide class action did not meet the typicality and adequacy requirements of Rule 23(a).  Adequate representation, however, is more than just a prerequisite to certification under Rule 23—it is a due process requirement.  *See Hansberry*, 311 U.S. at 44-45; *Shutts*, 472 U.S. at 811-12; *Spano*, 633 F.3d at 586-87.  And when dealing with monetary claims, particularly claims such as those in this case that are alleged to be worth millions or even billions of dollars, notice and opt-out rights are required as well.  *Wal-Mart*, 131 S. Ct. at 2558-59; *Shutts*, 472 U.S. at 812.  Plaintiffs' "direct action" theory, which would give no procedural protections for absent plan participants, contradicts Rule 23 and violates due process.  It is not authorized by ERISA and it is irreconcilable with the Supreme Court's collective adjudication jurisprudence.  It was not properly preserved or timely presented, and it conflicts with the Seventh Circuit's mandate in this very case.  For any or all of these reasons, it should be rejected.

---

small losses to their individual accounts.  This argument rings hollow.  Unlike the "American Rule," where "each attorney pays his own attorney's fees, win or lose," ERISA allows a litigant to collect attorney's fees if they obtain "some degree of success on the merits."  *Hardt v. Reliance Stand. Life Ins. Co.*, 130 S. Ct. 2149, 2152 (2010).  This purpose of this fee-shifting structure "'is to encourage the bringing of meritorious . . . claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.'"  *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (quoting *City of Riverside v. Rivera*, 477 U.S. 561,578 (1986)).

## CONCLUSION

Plaintiffs' motion to proceed under what they call a "direct action" should be denied.

Respectfully submitted,

BRYAN CAVE

/s/ Thomas E. Wack

William J. Kilberg P.C.
Mark A. Perry
Paul Blankenstein
J. Nicci Adams
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Facsimile:  (202) 467-0539

Christopher J. Rillo
SCHIFF HARDIN LLP
One Market Spear Street Tower
Spear Street Tower, Suite 3200
San Francisco, CA 94105
Telephone:  (415) 901-8700
Facsimile:  (415) 901-8701

Thomas E. Wack
Jeffrey S. Russell
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile:  (314) 259-2020

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendants' Memorandum in Opposition to Plaintiffs' Alternative Motion to Pursue A "Direct Action" was delivered via the Court's electronic filing system and by hand-delivery this 4th day of April 2012 to:

        Jerome J. Schlichter
        Mark G. Boyko
        Schlichter, Bogard & Denton
        100 South Fourth Street, Suite 900
        St. Louis, MO  63102
        Attorneys for Plaintiffs

                      /s/ Thomas E. Wack