IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GARY SPANO, et al.,**

**Plaintiffs,**

**v.**

**THE BOEING COMPANY, et al.,**

**Defendants.**

06-0743-DRH

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I.  Introduction and Background

Pending before the Court is Plaintiffs' amended motion for class certification (Docs. 309, 310, 340, 358 & 393).   Defendants again sternly oppose the motion contending that "[p]laintiffs are trying to lead this Court, once more, down the path to reversal." (Doc. 349 & 396).   Based on the following, the Court grants the amended motion for class certification.

Plaintiffs Gary Spano, John Bunk and James White, Jr., bring this action against defendants, The Boeing Company ("Boeing"), Employee Benefits Plans Committee, Scott M. Buchanan and Employee Benefits Investment Committee pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § § 1001 - 1461 ("ERISA"), on behalf of The Boeing Company Voluntary Investment Plan ("the Plan").   Plaintiffs allege breach of fiduciary duty pursuant to ERISA §

409, 29 U.S.C. § 1109, ERISA §§ 502(a)(2), (3), 29 U.S.C. § § 1132(a)(2), (3) and seek to remedy the Plan's losses and to obtain injunctive and other equitable relief for the Plan from defendants.   Plaintiffs claim that the breaches occurred on a plan-wide basis, and were the result of decisions made at the Plan, rather than the individual level, affecting all of the participants and beneficiaries in the Boeing-sponsored 401(k) plan.   Plaintiffs' Second Amended Complaint contains two counts: Count I - breach of fiduciary duty pursuant to ERISA 502(a)(2) and Count II - other remedies for breach of fiduciary duty pursuant to ERISA 502(a)(3) (Doc. 186).

In September 2008, the Court granted plaintiffs' motion for class certification certifying the following as a class:

> All persons, *excluding the Defendants and/or other individuals who are or may be liable for the conduct described in this Complaint*, who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Plan in the future.

(Doc. 193).   Thereafter, defendants filed a petition for permission to appeal the class certification Order and the Seventh Circuit granted the petition on August 10, 2009 (Doc. 279).

In January 2011, the Seventh Circuit reversed this Court's Order granting class certification and remanded the case for further proceedings.   *See Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011).   The Seventh Circuit found that the class definition was "breathtaking in its scope" ... and "defined so broadly that the

requirements of Rule 23(a) cannot be met.   Accordingly, additional proceedings to consider the requirements of both Rule 23(a) and Rule 23(b) are required." *Id.* at 586 & 591.   Specifically, the Seventh Circuit found that the class definition did not meet the typicality and adequacy requirements of Rule 23(a) or the requirements of Rule 23(b)(1).   *Id*. at 589-591.   Regarding typicality, the Seventh Circuit emphasized that this requirement ensures that there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Id*. at 586.   Similarly, adequacy ensures not only that the counsel representing the plaintiffs are competent, but also that the named representatives have no conflicts with the other proposed class members.   *Id.* at 586-587.

The relevant facts of this case are set forth in *Spano* and the Court's previous class certification Order, as well as other orders, and will not be recounted here except as pertinent to the pending motion.   Defendant Boeing offers a 401(k) plan to its employees known as The Boeing Voluntary Investment Plan.   It is a defined contribution plan governed by ERISA. [1]   Participants contribute varying percentages of their before-tax (and in some cases, after tax) earnings to the Plan. Boeing matches these contributions in varying percentages.   Boeing makes use of a

---

[1]"This means that participants may contribute up to a specified amount to individual accounts: those contributions are often (as here) matched to some degree by the employer.   Upon retirement, the participating employee has whatever amount the account has accumulated through contributions and earnings.   Unlike a defined benefit plan, it does not assure any fixed level of retirement income." *Howell v. Motorola, Inc.*, 633 F.3d 552, 556 (7th Cir. 2011)(citing *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 250 n. 1, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008)).

Master Trust to hold the assets of the Plan.    The Plan shares the services of record-keepers, investment managers, consultants, and other service providers directly and/or through the Master Trust.    The Plan holds over $24 billion in assets.

Plaintiffs are participants in the Plan.    In their Second Amended Complaint, plaintiffs allege, *inter alia*, that defendants breached their fiduciary duties by causing or allowing unreasonable fees and expenses to be charged against the assets of the Plan and by failing to ensure that the Plan's assets were used solely for the exclusive purposes of providing benefits to participants.    Plaintiffs allege that these excessive fees were imposed on the Plan through a combination of both "Hard Dollar" payments and hidden "Revenue Sharing" transfers.    Plaintiffs further allege that defendants breached their core fiduciary obligations by causing the Boeing Stock Fund ("BSF") to incur unnecessary fees and to hold excess cash; again impairing the value of, and return on, the Plan's assets.

The Second Amended Complaint also alleges that defendants further violated their fiduciary duties by failing to disclose and/or concealing material information regarding Plan fees and expenses.    Plaintiffs also allege that defendants selected and retained mutual funds as Plan investment options until 2006- which not only charged excessive investment management expenses - but were also the vehicle defendants used to funnel excessive Plan record keeping and administrative fees to State Street/CitiStreet via their undisclosed revenue sharing program.

Pursuant to Rule 23(a) and 23(b)(1) and alternatively 23(b)(3), plaintiffs

again seek certification this time for a class with subclasses.   Plaintiffs propose the

following for their Administrative Fee claim and class:

> All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who had an account balance at any time between September 28, 2000 and December 31, 2006, as all participants during that time paid recordkeeping fees.

Further, plaintiffs propose the following sub-classes:

> Mutual Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005, invested in any of the Plan's mutual funds, since each mutual fund during this time were laden with imprudently excessive fees.

> Small Cap Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005, invested in the Small Cap mutual fund in the Plan.

> Technology Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005 invested in the Plan's Technology Fund and whose investment in the Technology Fund underperformed that of the diversified domestic equity markets as represented by the Standard and Poor's 500 Index Fund minus 5 basis points for investment management.

> Company Stock Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2006 invested in the Plan's Boeing Company Stock Fund and whose investment in the Boeing Company Stock Fund underperformed that of Boeing Company Stock.

In their amended motion for class certification, plaintiffs summarize their allegations against defendants as the following: (1) defendants caused the Plan to pay unreasonable administrative fees to its recordkeeper CitiStreet; (2) defendants imprudently included, among the Plan's 11 investment options, four mutual funds, when superior institutional investment products were available; (3) that these same four mutual funds charged excessive fees which included kickbacks to CitiStreet in the form of revenue sharing; (4) that among these four mutual options, the Technology Fund was included in the Plan even though it was undiversified and imprudent for a retirement plan, and the Small Cap Fund was included even though it failed defendants' standards of prudence, because it provided additional revenue sharing fees to CitiStreet; and (5) that the Boeing Company Stock Fund imprudently held high levels of low-yielding cash, allowing State Street to place cash in its own funds and receive multiple layers of fees.

Plaintiffs argue that the revised class definition refines the class further to comport to the applicable limitations period; that the common question of "liability of the defendant to the class" alone is enough for commonality, even if a separate hearing is required for allocation of the recovered losses among class members. Further, the classes have common questions of fact and law, including the prudence of foregoing the massive bargaining power of the Plan by entering into a contract for recordkeeping services which required high priced mutual funds, the prudence of the decision to impose excessive revenue-sharing kickback fees on mutual fund investors, and the decision to select actively managed products which

were not reasonable expected to outperform low cost passive index funds.

### III.   Class Certification Standard

A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23. *Wal–Mart Stores v. Dukes,* –––U.S. –––– –––, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). "Rule 23 does not set forth a mere pleading standard." *Id.* Rather, the plaintiff seeking class certification "must affirmatively demonstrate" her compliance with Rule 23. *Id.* In addition, an implicit prerequisite to class certification is that a sufficiently definite class must exist. *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977–78 (7th Cir. 1977). If these requirements are met, the district court has broad discretion to determine whether certification is appropriate in a particular case. *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 596 (7th Cir. 1993); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1983). Before deciding whether to allow a case to proceed as a class action, a district court judge should make whatever factual and legal inquiries are necessary under Rule 23, even if those considerations overlap the merits of the case. *Dukes*, 131 S.Ct. at 2552. However, "the court should not turn the class certification proceedings into a dress rehearsal for trial on the merits." *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

"A plaintiff who moves for class certification must satisfy the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a), as well as at least one subsection of Rule 23(b)." *Puffer v. Allstate Ins. Co.*, 675

F.3d 709, 716 (7th Cir. 2012); *Spano*, 633 F.3d at 582.

Rule 23(b)(1) provides for a non-opt-out class action where individual actions could "establish incompatible standards of conduct for the party opposing the class" or "as a practical matter, would be dispositive of the interests of the other members of the class" or "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." Fed.R.Civ.P 23(b)(1). Rule 23(b)(2) allows class certification for an action seeking "final injunctive relief or corresponding declaratory relief." Fed.R.Civ.P. 23(b)(2). Finally, Rule 23(b)(3) is appropriate for "a case in which the common questions predominate and class treatment is superior." *Spano*, 633 F.3d at 583. If the requirements of Rule 23 have been satisfied, the court must certify the class action. "By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S.393, 130 S.Ct. 1431, 1437, 176 L.Ed.2d 311 (2010).

In *Spano*, the Seventh Circuit held that for class certification in ERISA cases courts must: "distinguish between an injury to one person's retirement account that affects only that person, and an injury to one account that qualifies as a plan injury. The latter kind of injury would be appropriate for class treatment, while the former would not." *Id*. 633 F.3d at 581. In the case of a defined contribution plan, as this one, it is possible that the injury suffered by a plaintiff may affect "the plan as a whole" even if the injury was not shared by any other participant in the plan. *Id*. at

582.   In such an instance, class treatment is not proper.   If however, the plans' fiduciaries' conduct resulted in an injury shared by other plan participants, a class action may be proper under Rule 23.   *See id.*   Accordingly, "[t]he propriety of class treatment will thus turn on the circumstances of each case."   *Id.*   With these principles in mind, the Court turns to consider the amended motion for class certification.

## IV.   <u>Analysis</u>

### A.   **Administrative Fee claim and class**

Plaintiffs seek to certify a Plan-wide class on the basis that defendants caused the plan to pay unreasonable fees to its recorder.   Plaintiffs request certification of the following class:

> All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who had an account balance at any time between September 28, 2000 and December 31, 2006, as all participants during that time paid recordkeeping fees.

#### 1. <u>Numerosity</u>

Rule 23(a)(1) requires that the class be so "numerous that joinder of all the members is impracticable."   Fed.R.Civ.P. 23(a)(1).   Defendants do not dispute that the requirement of numerosity is satisfied and, therefore, have forfeited any objection to plaintiffs' satisfaction of this requirement.   *See Volovsek v. Wisc. Dep't of Agr., Trade & Consuer Prot.*, 344 F.3d 680, 689 n.6 (7th Cir. 2003)(absence of legal argument forfeits consideration of claim).   Thus, it is clear

that the requirement of numerosity is met for the class.

2. <u>Commonality</u>

Rule 23(a)(2) requires a Court to find that "there are questions of law or fact common to the class," Fed.R.Civ.P. 23(a)(2), such that the class has "suffered the same injury as" the named plaintiff. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364 (1982). As the Supreme Court stated in *Wal-Mart Stores, Inc. v. Dukes*, Rule 23(a)(2) requires that the claims of the named plaintiff and the class:

> depend on common contention.... That common contention, moreover, must be of such a nature that it is capable of classwide resolution –which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.... What matters to class certification ... is not the raising of common "questions' —even in droves— but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

131 S.Ct. at 2551 (quote omitted). A "superficial" common question is not enough, but "even a single common question" can suffice for commonality. *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 497 (7th Cir. 2012)(internal citations and quotations omitted); *see also Spano*, 663 F.3d at 558 ("But this assumes that every question must be common, and, as we have discussed, that is not what Rule 23(a)(2) demands"). "[A] common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Courts have found a common nucleus of operative fact in

situations where a defendant has engaged in standardized conduct toward members of the class.  *See*, *e.g. Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)(listing cases).

As the Court previously found, the Court concludes that common issues of law and fact are present.  Here, plaintiffs contend that defendants indisputably made decisions regarding the Plan's administrative expenses and investment options for the Plan as a whole, affecting all participants in the same manner and did not act individually to particular participants.   These are allegations that affect the Plan as a whole and all of the participants in the plan.   Plaintiffs challenge the reasonableness of the total compensation defendants caused the Plan to pay CitiStreet from any and all sources as defendants managed and controlled the Plan's assets and directed the Plan's investment options.   According to plaintiffs, every participant in the Plan is entitled to a refund of the excessive amount.   "The assertion that Boeing imposes excessive fees on all participants, as well as the assertion that Boeing has failed to satisfy its fiduciary duties in its selection of investment options, both describe problems that would operate across the plan rather than at the individual level.  *Cf. Hecker v. Deere & Co.*, 556 F.3d 575, 584-87 (7th Cir. 2009)(noting that the record showed sufficient variety in investments and fee levels to satisfy ERISA requirements).   We thus conclude, as did our colleagues in *Schering*, that the class met the commonality requirement of Rule 23(a)(2)."  *Spano*, 633 F.3d at 586.   Hence, the Administrative Fee Class meets the commonality requirement of Rule 23(a)(2).

    3.  <u>Typicality</u>

The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement of Rule 23(a)(2). *Rosario*, 963 F.2d at 1018. The typicality requirement "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola*, 472 F.3d 506, 514 (7th Cir. 2006)(quotation and citation omitted). In *Spano*, the Seventh Circuit stated that the "starting point" for the typicality analysis is "that there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. "In keeping with the teachings of *General Telephone*, it seems that a class representative in defined-contribution case would at a minimum need to have invested in the same funds as the class members. It is entirely possible, after all, that out of the 11 options a particular plan might offer, 10 were sound and one was ill-advised and should never have been offered." *Id.*

The Court concludes that plaintiffs' claims are typical of those of the putative class. Plaintiffs maintain that defendants had a fiduciary duty to ensure that the expenses of administering the Plan were reasonable. In fact, Plaintiffs challenge the reasonableness of the total compensation defendants caused the Plan to pay CitiStreet from any and all sources. Plaintiffs' proposed class contains every participant in the Plan, regardless of the chosen investment options, that invested in the Plan from September 28, 2000 to December 31, 2006. The class definition

is no longer "breathtaking in scope."   The definition no longer contains participants from the past and the future.   It has been limited to the time frame of September 28, 2000 to December 31, 2006.   The named plaintiffs Spano, Bunk and White were participants in the Plan during the entire class period.   Plaintiffs maintain "all of which paid revenue sharing in addition to the per participant and float compensation paid by all participants to CitiStreet."   The named plaintiffs and each member of the class have an identical claim, that defendants breached their fiduciary duties by permitting CitiStreet to receive recordkeeping compensation from the Plan that was excessive and caused the Plan to pay CitiStreet fees from any and all sources.   The Court concludes that Spano, Bunk and White satisfy the typicality requirement.

4. <u>Adequacy</u>

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."   Fed.R.Civ.P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."   *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)(citation omitted).   In order to satisfy the requirements of Rule 23(a)(4), the class representative must "possess the same interest and suffer the same injury as the class members."   *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).   "[T]here is a constitutional dimension to this part of the inquiry; absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict of interest with them or who was

otherwise inadequate." *Spano*, 633 F.3d at 587 (citing *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed 22 (1940)). Courts do not deny class certification on speculative or hypothetical conflicts. *See Rosario*, 963 F.2d at 1018-19.

Here, based on the new definition, the Court finds that no conflict exists between the named representatives and the unnamed class members. Plaintiffs have identified all of the named plaintiffs as class representatives for the administrative fees claim class. Each class member has a complaint concerning excessive fees. There is no indication that a participant will be harmed by the recovery of the excessive fees. The Court concludes that plaintiffs have no conflicts of interest with the members of the proposed class that prevent them from serving as adequate class representatives. The Court concludes that Spano, Bunk and White satisfy the adequacy requirement. Thus, as to the Administrative fees claims and class the requirements of Rule 23(a) are met.

5. Rule 23(b)

After fulfilling the requirements of Rule 23(a), plaintiffs must also meet one of the subsections of Rule 23(b). Plaintiffs contend that they meet the requirements of Rule 23(b)(1)(A) or Rule 23(b)(1) or alternatively meet the requirements of both Rule 23(b)(2) and (b)(3).

Rule 23(b)(1) allows for certification of the class if:

T]he prosecution of separate actions by or against individual members

> of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1).   Though the Supreme Court has cautioned that Rule 23(b)(1) should be "narrowly interpreted," it also advised that "[a]mong the traditional varieties of representative suit encompassed by Rule 23(b)(1)(B) were those involving the 'presence of property which called for distribution or management.' " *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 833 (1999) (citations omitted).   As to this issue, the Seventh Circuit stated:

> "Focusing only on the class that the district court actually certified, we cannot find the necessary identity of interest among all class members. A claim of imprudent management, for example, is not common if the alleged conduct harmed some participants and helped others which appears to be the case.   Without the common interest, there is no reason to assume that an adjudication of one person's claim 'as a practical matter would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.' Fed.R.Civ.P. 23(b)(1)(b)."

*Spano*, 633 F.3d at 588.

In this class, the Court finds that the failure to certify the proposed class would result in inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for defendants, thereby making this action appropriate for class certification under

Rule 23(b)(1)(A).   In addition, adjudications with respect to individual members of the proposed class would, as a practical matter, be dispositive of the interests of the other members who are not parties to the adjudication or substantially impair or impede their ability to protect their interests, making certification under Rule 23(b)(1)(B) appropriate as well.

## B.   The Mutual Fund claim and subclass

Like the administrative fee claims, plaintiffs contend that the four mutual funds contained in the Plan were imprudent investments because the participants in each of the four funds paid excessive fees.   Plaintiffs seek to certify a subclass on the basis that the four mutual funds caused them to incur unreasonable administrative expenses.   Plaintiffs request certification of the following subclass:

> Mutual Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005, invested in any of the Plan's mutual funds, since each mutual fund during this time were laden with imprudently excessive fees.

### 1. Numerosity

As stated earlier, the parties do not dispute that numerosity has been met. According to plaintiffs, in 2002 the mutual fund subclass contained more than 170,000 participants.   That is sufficient to satisfy the requirement of Rule 23(a)(1).

### 2. Commonality

As to the fees, plaintiffs challenge, at least in part, the propriety of fees that were charged to every participant that held the mutual funds offered by defendants.

"It is enough that there be one or more common questions of law or fact."   *Spano*, 633 F.3d at 585.   In a defined contribution plan, "fund participants operate against a common background."   *Id*.   Thus, plaintiffs' mutual fund subclass satisfies the requirement of Rule 23(a)(2).

###### 3. Typicality

Here, mutual fund subclass is warranted because the claimed excessive fees were imposed on all the participants in the funds.   *See Id*. at 590.   Plaintiffs claim that the fees were in excessive in that they: (1) paid revenue sharing to CitiStreet; (2) were mutual funds instead of far less expensive, institutionally priced separate accounts; (3) were requirements of defendants' contract with CitiStreet.   Plaintiffs have specified that the disputed fees were charged to each participant with a mutual fund and the relief sought by the named plaintiffs will compensate each class member for the excessive fees based on the amount of time and amount of money the participant invested in each mutual fund.   To the extent that there are differences among class members' damages, those differences would be a product of mathematics based on their account balances in the mutual funds during the relevant time frame.   Because every participant that had a mutual fund paid a portion of the alleged excessive fee, any participant's claim is typical of the class. *Id*.

Plaintiffs have identified each of the named plaintiffs as a class representative for the mutual fund subclass for the excessive fees claim.   Plaintiff Bunk invested in the Boeing Company Stock Fund and the Small Cap Fund, plaintiff Spano

invested in the Growth Fund and the Technology Fund, and plaintiff White invested in the Growth Fund, Value Fund, Technology Fund and the Small Cap Fund.   The Court concludes that plaintiffs Spano, White and Bunk satisfy the typicality requirement.

4. Adequacy

As with the Administrative Fee claim, plaintiffs have identified all of the named plaintiffs as representatives for the mutual fund subclass. Each class member has a complaint concerning excessive fees.  The Court concludes that plaintiffs have no conflicts of interest with the members of the proposed class that prevent them from serving as adequate class representatives. Similarly, the Court finds that Spano, White and Bunk satisfy the adequacy requirement.

5. Rule 23(b)

As with the Administrative Fee claim, the Court finds that the failure to certify the proposed mutual fund subclass would result in inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for defendants, thereby making this action appropriate for class certification under Rule 23(b)(1)(A).  In addition, adjudications with respect to individual members of the proposed class would, as a practical matter, be dispositive of the interests of the other members who are not parties to the adjudication or substantially impair or impede their ability to protect their interests, making certification under Rule 23(b)(1)(B) appropriate as well.

**C. The Small Cap Fund**

Plaintiffs seek to certify a subclass on that basis that participants in the Small Cap Fund were charged excessive fees.   Plaintiffs claim that the Small Cap Fund charged its investors 107 basis points per year in fees which plaintiffs maintain was grossly excessive.   Plaintiffs also claim that the Small Cap Fund allowed State Street to syphon off all but 15 basis points of that fee forcing all of the fund's investors, including each participant in the Small Cap Fund to pay excess fees.   In compliance with *Spano*, the Small Cap Fund is temporally limited.   633 F.3d at 583-584.   Plaintiffs propose the following subclass:

> <u>Small Cap Fund Subclass</u>: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005, invested in the Small Cap mutual fund in the Plan.

1. <u>Numerosity</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."   Plaintiff maintain that 68,160 individuals invested in the Small Cap Fund during the class period.   Defendants do not dispute that this element has been met.   Thus, plaintiffs satisfy the numerosity requirement.

2. <u>Commonality</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."   "It is enough that there be one or more common questions of law or fact." *Spano*, 633 F.3d at 585.   As to fees, plaintiffs challenge, at least in part, the

propriety of the fees that were charged to every participant in the Small Cap Fund. That is sufficient to satisfy the requirement of Rule 23(a)(2).

### 3. Typicality

Here, the Small Cap Fund subclass is warranted because the claimed excessive fees were imposed on all the participants in the Small Cap Fund. *See id.* at 590. Plaintiffs have specified that the excessive fees were charged to each participant in the Small Cap Fund and the relief sought by the named plaintiffs will compensate each class member for the excessive fees. Because every participant in the Small Cap Fund paid a portion of the excessive fee, any participant's claim is typical of the class. *Id.*

Plaintiffs have identified plaintiffs Bunk and White as representatives for the Small Cap Fund subclass as these two named plaintiffs invested in the Small Cap Fund during the class period. These named plaintiffs and each member of the subclass have an identical claim. The Court concludes that plaintiffs Bunk and White satisfy the typicality requirement.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." A court must make sure that there are no inconsistencies between the interests of the named party and the class that he or she represents. *Uhl*, 309 F.3d at 985 (citing *Amchem Prods.*, 521 U.S. at 625).

Plaintiffs have identified plaintiffs Bunk and White as class representatives

for the Small Cap Fund subclass.   The Court finds that the named plaintiffs have no conflicts of interest with the members of the proposed subclass that prevent them from serving as adequate class representatives.   The Court concludes that named plaintiffs Bunk and White satisfy the adequacy requirement.

5. Rule 23(b)

As with the Administrative Fee claim and the Mutual Fund claim, the Court finds that the failure to certify the proposed Small Cap Fund subclass would result in inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for defendants, thereby making this action appropriate for class certification under Rule 23(b)(1)(A).   In addition, adjudications with respect to individual members of the proposed class would, as a practical matter, be dispositive of the interests of the other members who are not parties to the adjudication or substantially impair or impede their ability to protect their interests, making certification under Rule 23(b)(1)(B) appropriate as well.

**D.   The Technology Fund Claim**

In this claim, plaintiffs allege that the Technology Fund was imprudent because it was imprudently selected, undiversified and excessively (unnecessarily) risky in that defendants knew that participants were, predictably, using the Technology Fund to chase the technology bubble even while the fund itself became increasingly volatile.   Plaintiffs maintain that defendants persisted in offering a Technology Fund that they knew to be excessively risky, undiversified and

imprudent for a retirement plan.   In compliance with *Spano*, the Technology Fund

subclass is temporally limited.   633 F.3d at 583-84. Plaintiffs seek certification of

the following subclass:

> Technology Fund Subclass: All participants or beneficiaries of the
> Boeing Voluntary Investment Plan, excluding the Defendants,
> members of the Defendant committees, and the Boeing directors, who,
> between September 28, 2000 and December 31, 2005 invested in the
> Plan's Technology Fund and whose investment in the Technology Fund
> underperformed that of the diversified domestic equity markets as
> represented by the Standard and Poor's 500 Index Fund minus 5 basis
> points for investment management.

### 1. Numerosity and Commonality

Plaintiffs contend that this subclass contains 104,190 plan participants and

defendants do not dispute that this element has been met.   Thus, the Court finds

that numerosity has been met pursuant to Rule 23(a)(1).   Further, the Court finds

that plaintiffs' challenge to the Technology Fund as a whole raises at least one

common question that satisfies the requirement of commonality, such as whether

defendants breached their duties under 29 U.S.C. § 1104(a)(1) in its management

of the Technology Fund and what prudent alternative exists by to determine the

Plan's losses under 29 U.S.C. § 1109(a), from which each subclass member will

derive his or her individual loss.

### 2. Typicality and Adequacy

Plaintiffs contend that the S&P 500 Index is the prudent alternative to the

Technology Fund; (1) because it is the "diversified equity portfolio[]" that is the

opposite of the imprudently concentrated portfolio of that small sector investment

and (2) because the S&P Index, which covers 85% of the market capitalization of US stocks, approximates returns of an equity portfolio.   Plaintiffs contend that since the class members and plaintiffs White and Spano suffered losses to their retirement savings when compared to prudent alternative investments, plaintiffs have demonstrated "enough congruence between the named representative's claims and that of the unnamed members of the class..."   Further, plaintiffs contend that their interests are clearly aligned with those of the other class members. Defendants counter that plaintiffs have offered no tenable explanation for choosing the S&P 500 Index as the comparator for the Technology fund, and they certainly cannot prove it can be appropriately applied on a class wide basis.   Specifically, defendants argue that the investments the Plan participants would have held in the absence of the Technology Fund must be determined by looking to the actual investments the participants chose and plaintiffs have not done that. Based on the following, the Court rejects defendants' arguments and agrees with plaintiffs.

Just last month, the Seventh Circuit, in a very similar case, found the Hueler FirstSource Universe index ("Hueler Index")[2] as a proper benchmark for class certification of a "stable-value fund" class based on an imprudent management claim.   *Abbott v. Lockheed Martin Corp.*, --- F.3d ---, 2013 WL 4010226, Slip No. 12-3736 (7th Cir. August 7, 2013).   Specifically, the Seventh Circuit held:

> In concluding that the reference to the Hueler Index prejudged the merits of the SVF claim, the district court appears to have assumed that accepting the class definition also required him to accept the

---

2 That index tracks the person of a variety of stable value funds over time.

conclusion that the SVF was mismanaged because it underperformed relative to the Hueler Index.   Any such assumption would be mistaken.   It misunderstands both the nature of the SVF claim and the relation between the class definition and the merits. Plaintiffs are not arguing that the SVF was imprudently managed in violation of ERISA *because* it did not match or outperform the Heuler Index; rather, Plaintiffs allege that the SVF was imprudently managed because its mix of investments was not structured to allow the fund to beat inflation and therefore that it could not serve as a prudent retirement investment for Lockheed employees.   If Plaintiffs prevail on this theory, they may offer the Hueler Index as one basis for calculating damages.   For now, however, the reference to the Hueler Index in the class definition in no way binds the district court to the use of the Hueler Index as the damages measure should Plaintiffs prevail.   If the court concludes that a different measure be better, it is free to use one.

*Id*. Slip at 12-13.   "In such cases, a district court should not certify a class that fails to address that danger (say, through the use of subclasses or by defining the class more narrowly). But this court has never held, and *Spano* did not imply, that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely.   *Id.* Slip at 20-21 (citations and quotations omitted).   Here, plaintiffs used an identical method to define the Technology Fund as the SVF in *Abbott*, thus, the requirements of typicality are met.   Further, plaintiffs have identified named plaintiffs Spano and White who lost retirement savings compared to the benchmark as a result of defendant's decision to include the Technology Fund as class representatives.   The Court finds no inconsistencies between the interests of the names parties and the subclass they seek to represent.   Therefore, the Court concludes that plaintiffs Spano and White satisfy the typicality and adequacy requirement.

3. Rule 23(b)

Likewise, the Court finds that the failure to certify the proposed Technology Fund subclass would result in inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for defendants, thereby making this action appropriate for class certification under Rule 23(b)(1)(A).   In addition, adjudications with respect to individual members of the proposed class would, as a practical matter, be dispositive of the interests of the other members who are not parties to the adjudication or substantially impair or impede their ability to protect their interests, making certification under Rule 23(b)(1)(B) appropriate as well.

**E. Company Stock Fund Subclass**

Plaintiffs claim that the Company Stock Fund was imprudently run in that it paid excessive fees to State Street and held excessive levels of cash which acted as a drag, reducing the performance of the fund when compared to Boeing stock itself. Specifically, plaintiffs allege that defendants breached their fiduciary duties in managing the Boeing Stock Fund in that the manner in which defendants ran the fund required the Plan to pay "investment management fees" to State Street. Plaintiffs maintain that investment management of an employer stock fund is not necessary, as the fund invests only in the company stock.   Plaintiffs seek to recover the difference between their performance and the performance they would have had had the Company Stock Fund been prudently managed.   Plaintiffs propose the following subclass.

Company Stock Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2006 invested in the Plan's Boeing Company Stock Fund and whose investment in the Boeing Company Stock Fund underperformed that of Boeing Company Stock.

### 1. Numerosity and Commonality

Plaintiffs contend that this subclass contains 124,997 individuals that lost money during the class period and defendants do not dispute that this element has been met.   Thus, the Court finds that numerosity has been met pursuant to Rule 23(a)(1).    Further, the Court finds that this subclass contains common questions of law and fact.   These questions include whether defendants mismanaged the Company Stock Fund and what is the proper measure of the losses to the Plan that defendants would have to make good under § 1109(a).   Thus, this subclass satisfies Rule 23(a)(2).

### 2. Typicality and Adequacy

Plaintiffs allege the Company Stock Fund was imprudently run in that it paid excessive fees to State Street and held excessive levels of cash which acted as a drag, reducing the performance of the fund when compared to Boeing stock itself. Plaintiffs' company Stock Fund subclass is restricted to participants who were invested in Company Stock Fund during the statutory and discovery period and who suffered a monetary loss to their individual accounts as a result of defendants' breaches of fiduciary duties unique to that option. Further, Rule 23(a)(4) requires

that "the representative parties will fairly and adequately protect the interests of the class."   In order to satisfy the requirements of Rule 23(4), the class representative must "possess the same interest and suffer the same injury as the class members." *Uhl*, 309 F.3d at 985 (quoting *E. Tex. Motor Freight Sys. Inc.*, 431 U.S. at 403).

Plaintiffs have identified named plaintiffs Bunk and Spano, who suffered losses in this subclass, as class representatives.   The Court finds no inconsistencies between the interests of the names parties and the subclass they seek to represent.   Therefore, the Court concludes that plaintiffs Bunk and Spano satisfy the typicality and adequacy requirement.

3. <u>Rule 23(b)</u>

Having concluded that the requirements of Rule 23(a) are satisfied, the Court turns to the question of whether a class can be maintained under one of Rule 23(b)'s three subsections.   Here, the Court concludes that the failure to certify the Company Stock Fund subclass would result in inconsistent or varying adjudications with respect to the individual members of the subclass, which would establish incompatible standards of conduct for defendants, thereby making this action appropriate for certification under Rule 23(b)(1)(A).   Furthermore, adjudications with respect to individual members of the Company Stock Fund subclass would, as a practical matter, be dispositive of the interests of the other members who are not parties to the adjudication or substantially impair or impede their ability to protect their interests, making certification under Rule 23(b)(1)(B) appropriate as well.

**Adequacy of Counsel**

This issue is not in dispute as to the class or the subclasses.  Thus, the

Court finds that class counsel is adequate and that the law firm of Schlichter

Bogard & Denton is qualified to proceed as class counsel for the administrative fee

claim class, the mutual fund subclass, the small cap fund subclass and the

company stock fund subclass.

## V.   <u>Conclusion</u>

Accordingly, the Court **GRANTS** plaintiffs' amended motion for class

certification (Doc. 309).    The Court **CERTIFIES** the following class with

subclasses:

> <u>Administrative Fee claim and class</u>: All participants or
> beneficiaries of the Boeing Voluntary Investment Plan, excluding the
> Defendants, members of the Defendant committees, and the Boeing
> directors, who had an account balance at any time between September
> 28, 2000 and December 31, 2006, as all participants during that time
> paid recordkeeping fees.

> <u>Mutual Fund Subclass</u>: All participants or beneficiaries of the
> Boeing Voluntary Investment Plan, excluding the Defendants,
> members of the Defendant committees, and the Boeing directors, who,
> between September 28, 2000 and December 31, 2005, invested in any
> of the Plan's mutual funds, since each mutual fund during this time
> were laden with imprudently excessive fees.

> <u>Small Cap Fund Subclass</u>: All participants or beneficiaries of
> the Boeing Voluntary Investment Plan, excluding the Defendants,
> members of the Defendant committees, and the Boeing directors, who,
> between September 28, 2000 and December 31, 2005, invested in the
> Small Cap mutual fund in the Plan.

> <u>Technology Fund Subclass</u>: All participants or beneficiaries of
> the Boeing Voluntary Investment Plan, excluding the Defendants,

members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2005 invested in the Plan's Technology Fund and whose investment in the Technology Fund underperformed that of the diversified domestic equity markets as represented by the Standard and Poor's 500 Index Fund minus 5 basis points for investment management.

Company Stock Fund Subclass: All participants or beneficiaries of the Boeing Voluntary Investment Plan, excluding the Defendants, members of the Defendant committees, and the Boeing directors, who, between September 28, 2000 and December 31, 2006 invested in the Plan's Boeing Company Stock Fund and whose investment in the Boeing Company Stock Fund underperformed that of Boeing Company Stock.

Further, the Court **APPOINTS** Plaintiffs Gary Spano, John Bunk, and James White, Jr., as representatives of the class and the mutual fund and small cap fund subclasses.  The Court, also, **APPOINTS** the law firm of Schlichter, Bogard & Denton as class counsel.  Further, the Court **DENIES as moot** plaintiffs' alternative motion to pursue direct cause of action for breach of fiduciary duties pursuant to ERISA section 502(A)(2) (Doc. 311).  Lastly, the Court **DENIES as moot** plaintiffs' motion to strike notice of supplemental authority (Doc. 387).

**IT IS SO ORDERED.**

Signed this 19th day of September, 2013.

Digitally signed by David R. Herndon
Date: 2013.09.19 14:45:08 -05'00'

**Chief Judge**
**United States District Court**